UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BERTHA HERNANDEZ,
*individually and on behalf of all
others similarly situated*,

                                   Plaintiff,

                  – *against* –

THE WONDERFUL COMPANY LLC
*and* POM WONDERFUL LLC,

                                   Defendants.

**OPINION & ORDER**

23-cv-1242 (ER)

RAMOS, D.J.:

Bertha Hernandez brought this putative class action alleging violations of consumer protection laws based on the presence of certain synthetic chemicals in pomegranate juice produced, marketed, and sold by The Wonderful Company LLC and its wholly owned subsidiary POM Wonderful LLC (together, "Defendants"). Doc. 1. Before the Court is Defendants' motion to dismiss the suit in its entirety. Doc. 27. For the reasons set forth below, the motion is granted.

I.      **BACKGROUND**

        **A. Factual Background**

Defendants manufacture and sell POM Wonderful® 100% Pomegranate Juice drink ("the Product") at mass market retailers and grocery stores throughout the United States. Doc. 24 (First Amended Class Action Complaint ("FAC")) ¶¶ 4, 22. Hernandez alleges that she purchased and consumed the Product on numerous occasions at various retail stores in New York, New York in July 2022. *Id.* ¶ 87.

She purchased the Product relying upon the representations set out in Defendants' labelling and marketing materials that the Product was "safe for use and was a 100%

juice beverage containing 'All Natural' ingredients." *Id.* ¶ 88.  Defendants'

representations with respect to the Product include:

- The front label of the product describes it as an "Antioxidant  Superpower." *Id.* ¶ 25.

- The cap on the Product reads "100% POMEGRANATE JUICE" and lists the slogan "Drink It Daily.  Feel It Forever." *Id.* ¶¶ 26–27.

- The back label states the Product includes "4 CALIFORNIA POMEGRANATES," "No Sugar Added," and "100% JUICE FROM 4 CALIFORNIA POMEGRANATES ALL NATURAL." *Id.* ¶ 27.

- The only ingredient listed on the Product's packaging is "100% pomegranate juice from concentrate." *Id.*

- Defendants' website represents that the Product is "Tree to Table" and links to scientific studies purporting to demonstrate that the Product is a healthy choice for consumers. *Id.* ¶¶ 28–29.

- Defendants' social media campaigns for the Product also emphasize that the Product is a source of antioxidants, and consumers can "[s]upercharge [their] health with antioxidants" from the product. *Id.* ¶¶ 30–31.

Contrary to Defendants' representations that the Product is all natural, however,

Hernandez alleges that it actually contains per- and polyfluoroalkyl substances ("PFAS"),

which are synthetic chemicals harmful to humans and the environment. *Id.* ¶¶ 1–3, 34–

35.  PFAS are also sometimes referred to as "forever chemicals" because they

bioaccumulate, or build up in the body over time, but are harmful even in small doses.

*Id.* ¶¶ 2, 36–48.  Because PFAS are, by definition, man-made, they are not "natural." *Id.*

¶ 35.  Hernandez's independent testing in July 2022 detected material levels of PFAS in

the Product, including:  2.5 parts per trillion ("PPT") of 1H, 2H, 2H-perfluorooctane

sulfonic acid and 6.5 PPT of perfluoro-n-pentanoic acid, which Hernandez alleges is

above guidance from the U.S. Environmental Protection Agency ("EPA") as to acceptable

levels of PFAS in drinking water. *Id.* ¶¶  49–54.  Although Hernandez tested the

Product,[1] it was not the particular bottle(s) that she purchased and consumed, meaning

---

[1] Hernandez does not specify how many bottles of the Product were tested, nor does she provide any further details about the nature or results of the independent testing or who performed it.

she could only allege that it "is plausible that [her] Product contained PFAS." *Id.* ¶ 49, 89.

Had Hernandez known that the Product contained PFAS, she would not have purchased it or would have paid less for it, and she alleges she therefore suffered and continues to suffer economic injuries. *Id.* ¶¶ 88–90.

### B. Procedural Posture

On February 14, 2023, Hernandez filed the instant putative class action on behalf of all persons who, "[d]uring the fullest period allowed by law, . . . purchased the Product within the United States for personal use and not for resale" ("the Class") with a subclass of persons who purchased the Product within New York ("the New York Subclass"). Doc. 1; Doc. 24 ¶ 114.  She brings claims for violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301), breach of express warranty based on violations of the warranty laws of 40 states, negligence per se, and unjust enrichment.  Doc. 24.  She also brings claims for violations of the New York Deceptive Trade Practices Act (N.Y. Gen. Bus. L. §§ 349–50) and New York State Agriculture and Markets Law (N.Y. Agric. & Mkts. L. §199-a).  *Id.*  Hernandez amended the class action complaint on June 9, 2023.  *Id*.

Defendants filed the instant motion to dismiss on June 30, 2023 pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim.  Doc. 27.  Defendants also request the Court take judicial notice of certain exhibits to their motion to dismiss (Doc. 28), which Hernandez opposes (Doc. 31).

## II.   LEGAL STANDARDS

### A. Lack of Standing and Subject-Matter Jurisdiction Pursuant to Rule 12(b)(1)

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject-matter jurisdiction as the "threshold question" (quotation marks omitted)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Because standing is challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (internal quotation marks and citation omitted).  However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring an action.  *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (citation omitted*); see also FW/PBS, Inc. v. City Of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and if the plaintiff fails to "clearly [ ] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," he does not have standing under Article III. (internal quotation marks and citation omitted)).

In resolving a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), a district court may consider evidence outside the pleadings.  *Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).

### B.  Failure to State a Claim Pursuant to Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *Doe v. N.Y. Univ.*, No. 20-cv-1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

### III.   DISCUSSION

#### A.  Defendants' Request for Judicial Notice is Granted, in that the Court Can Take Notice of the *Existence* of Agency Regulatory Guidance on PFAS

In support of their motion to dismiss, Defendants submit as exhibits:  (1) a webpage from the EPA titled "PFAS Explained"; (2) a webpage from the EPA titled "Our Current Understanding of the Human Health and Environmental Risks of PFAS"; (3) a webpage from the Agency for Toxic Substances and Disease Registry ("ATSDR")[2] titled "Per- and Polyfluoroalkyl Substances (PFAS) and Your Health; What are PFAS?"; (4) a webpage from the EPA titled "Per- and Polyfluoroalkyl Substances (PFAS); Proposed PFAS National Primary Drinking Water Regulation"; (5) a webpage from the U.S. Food and Drug Administration titled "Per- and Polyfluoroalkyl Substances (PFAS)"; and (6) a webpage from healthline.com titled "How to Reduce Your Exposure to PFAS:  the Hidden Toxic 'Forever Chemicals,'" which Hernandez cited in the FAC.  Doc. 29 at 2–3. Defendants contend that, even on a motion to dismiss, the Court may take judicial notice of the first five exhibits as documents retrieved from official government websites, and the sixth exhibit was incorporated by reference into the FAC.  *Id.* at 3–4.

Hernandez concedes that the sixth exhibit was incorporated by reference into the complaint and therefore properly before the Court, but she disputes that the other five are properly judicially noticeable without converting the motion to dismiss into a motion for summary judgment.  Doc. 31 at 3–4.  Moreover, even if the Court did take notice of the exhibits, they may not be relied upon for the truth of the matter asserted, as opposed to their mere existence.  *Id.* at 8–9.  Hernandez therefore asks the Court to strike Defendants' first five exhibits and any references thereto.  *Id.* at 9.

Defendants reply that "[t]he Court can (and should) take judicial notice of [the exhibits] because they consist of publicly available documents retrieved from official government websites that are *not offered to establish the truth of the matter asserted*, but

---

[2] ATSDR is a federal public health agency of the U.S. Department of Health and Human Services.

rather offered to establish the fact that the EPA, FDA, and ATSDR have published regulatory guidance on PFAS," as Hernandez has conceded is permissible.  Doc. 32 at 2 (emphasis in original).

Accordingly, the Court will take judicial notice of the exhibits only for the fact of their existence (*i.e.*, for the fact that the three agencies have issued regulatory guidance on PFAS) and not for the truth of information contained therein.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citing *Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991)); *Cali v. E. Coast Aviation Servs.*, 178 F. Supp. 2d 276, 287 n.6 (E.D.N.Y. 2001).

### B.  Defendants' Motion to Dismiss is Granted Pursuant to Rule 12(b)(1)

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether the complaint states a claim.  *See Darby Trading*, 568 F. Supp. 2d at 335 (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir.1963)); *Yellow Page Solutions Inc. v. Bell Atl. Yellow Pages Co.*, No. 00-cv-5663 (MM), 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) (citation omitted).  Accordingly, the Court first addresses Defendants' arguments as to standing and subject-matter jurisdiction before turning to Defendants' 12(b)(6) arguments.

#### 1.  *Hernandez Fails to Establish Article III Standing, and the Court Therefore Lacks Subject-Matter Jurisdiction*

Defendants challenge that Hernandez lacks Article III standing—and therefore that this Court lacks subject-matter jurisdiction—because the FAC does not allege facts plausibly demonstrating that any bottles of the Product that she specifically purchased was adulterated with harmful PFAS; and, even if her bottle(s) were adulterated, that cannot be extrapolated to all bottles of the Product.  Doc. 28 at 13–15.  Moreover, regardless if the Product contains PFAS, Hernandez's theory of economic harm (that she would not have purchased the Product, or would have purchased it at a lower price, had

she known of the PFAS) is not a legally cognizable injury absent identification of either past harm to one's health from consumption of the Product or an imminent risk of future harm. *Id.* at 16–19.

Hernandez responds that she has plausibly alleged that the bottle she consumed of the Product contained PFAS, which is all she must do at the pleading stage, because both the testing of a sample of the Product and her purchase of the Product occurred in July 2022. Doc. 30 at 14–17. It is not fatal to standing that she did not actually test the bottle she purchased and consumed so long as the testing was reasonably near in time to her purchase. *Id.* at 15. Further, Hernandez argues that courts in this Circuit routinely accept price premium theories of standing in cases involving misrepresentations that a product is "natural." *Id.* at 17–19.

To establish standing under Article III of the Constitution, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must have a "personal stake" in the case in order to have standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (stating that the injury-in-fact requirement is "a low threshold," which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy" (citations omitted)). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2206; *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63–64 (2d Cir. 2021). As the Supreme Court has explained, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 141 S. Ct. at 2205 (citation

8

omitted).  "Article III standing requires a concrete injury even in the context of a statutory violation."  *Harty v. West Point Realty, Inc.*, 477 F. Supp. 3d 163, 167 (S.D.N.Y. 2020), *aff'd*, 28 F.4th 435 (2d Cir. 2022) (citation omitted).  "[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm."  *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (summary order).

Moreover, in a putative class action, the named plaintiff must allege that she was personally injured by defendants' conduct.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005). To establish class standing, a plaintiff must show that (1) "[s]he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant,' and (2) . . . such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 562 (S.D.N.Y. 2016) (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)); *see also Kendall v. Emps. Ret. Plan of Avon Prod.*, 561 F.3d 112, 118 (2d Cir. 2009) ("In a class action, once standing is established for a named plaintiff, standing is established for the entire class." (citation omitted)).

First, Defendants rely entirely on out-of-Circuit precedent to assert that Hernandez's price premium theory is not a cognizable Article III injury.  Doc. 28 at 16–19.  But that ignores explicit precedent in this Circuit holding that "an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing."  *Onaka v. Shiseido Ams. Corp.*, No. 21-cv-10665 (PAC), 2023 U.S. Dist. LEXIS 53220, at *10 (S.D.N.Y. Mar. 27, 2023) (quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021)); *see also Shaya Eidelman v. Sun Prods. Corp.*, No. 21-1046-cv, 2022 U.S. App. LEXIS 15480, at *2–3 (2d Cir. June 6, 2022) ("One method of demonstrating

actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'—that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have."); *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 357–58 (S.D.N.Y. 2022) (collecting cases).  Accordingly, Hernandez's "price premium" theory of economic injury is cognizable.

But her failure to plead specific facts concerning the third-party testing forming the basis of her allegations that the Product contains PFAS chemicals is fatal to her claim, as, without such details, Hernandez is left with only conclusory allegations insufficient to plausibly allege that the bottle(s) she purchased of the Product contained PFAS.  *See Onaka*, 2023 U.S. Dist. LEXIS 53220, at *11 ("[W]hile an Article III injury premised on a price premium theory is available to [the plaintiff, she] still 'must plead enough facts to make it plausible that [she] did indeed suffer the sort of injury that would entitle [her] to relief.'" (quoting *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 65–66 (2d Cir. 2021)).  In consumer protection cases like this one, Article III standing will be found whether the complaint "alleges facts demonstrating it is at least plausible that a plaintiff purchased a misbranded product."  *Id.*  Accordingly, a plaintiff could "allege that her purchased products actually were misbranded, *see Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 239 (S.D.N.Y. 2022); 'that a third-party investigation has revealed defects in the same line of such products' as those she purchased, *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-cv-1040 (JAM), 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023) (citing *John [v. Whole Foods Mkt. Grp., Inc.]*, 858 F.3d [732,] 732 [(2d Cir. 2017)]), or by alleging a 'broad systematic fraud in a market in which [plaintiffs] regularly transact[,'] *Wilson v. MasterCard*, 21-cv-5930, 2022 WL 3159305, at *5 (S.D.N.Y. Aug. 8, 2022)."  *Id.* at *11–12.  Hernandez does not allege any bottle of the Product she purchased actually tested positive for the presence of any PFAS.  *See* Doc. 24 ¶¶ 49–54.  While it is true that this "need not be fatal, if the independent testing is 'reasonably near in time' to [Hernandez's] own purchases," as here, a plaintiff must still

allege facts sufficient to show that the defects pervaded an entire line or market of products.  *See Onaka*, 2023 U.S. Dist. LEXIS 53220, at *11–14.

For instance, in *John*, which Hernandez relies upon, the plaintiff alleged that the defendant grocery store had systematically overstated the weights of pre-packaged food products and overcharged customers as a result.  858 F.3d at 734.  Reversing the district court's dismissal of the case for lack of standing, the Second Circuit held that the plaintiff need not plead he *personally* ever overpaid because, drawing all reasonable inferences in his favor, it was plausible he had done so at least once since third-party testing revealed that 89% of all packages were mis-labeled, and he purchased those types of pre-packaged products at least once or twice a month for years.  *Id.* at 736–37.

Likewise, in *Clinger*, which Hernandez also relies upon, a third-party study found that approximately one out of six sunscreen products contained benzene (a chemical that causes cancer and which plaintiffs alleged was unsafe at any level), including several manufactured by the defendant, and plaintiffs' independent testing corroborated the presence of benzene in several of defendant's sunscreen products.  2023 WL 2477499, at *1–2.  Because it was "reasonable to assume that benzene . . . must have appeared by reason of some aspect of the manufacturing process, . . . if the plaintiffs bought a particular sunscreen product reasonably near in time to the testing positive of that product for the presence of benzene, then it is at least plausible to conclude that the product purchased by the plaintiff was also contaminated with benzene."  *Id.* at *4.  Accordingly, the court held that the three of the six plaintiffs who had purchased a type of sunscreen product that had tested positive for benzene had standing, even if the specific bottle of the product they purchased had not been tested.  *Id.*  But the remaining three plaintiffs, who alleged that they purchased other sunscreen products that were from the same defendant-manufacturer but were product lines not tested for benzene, lacked standing because it would be only "speculative—rather than plausible—to conclude that benzene was

present" in those product lines, given that benzene was only present in one out of six sunscreens tested.  *Id.* at *7.

And, like the latter three *Clinger* plaintiffs, the plaintiffs in *Onaka*, to which Hernandez also directs the Court, lacked standing where plaintiffs brought a putative class action that a defendant-manufacturer's cosmetic products contained PFAS (contrary to its marketing as "natural"), but the plaintiffs failed to allege that they either purchased adulterated products or that PFAS was so widespread that it was plausible that either specific product lines or all of defendant's products contained PFAS.  2023 U.S. Dist. LEXIS 53220, at *14–16.

Although, here, Hernandez does allege that both the testing of the Product and her purchase occurred in July 2022—which makes it a slightly closer call that *Onaka*, in which the complaint failed to even allege the testing was "reasonably near in time" to the plaintiffs' purchases, 2023 U.S. Dist. LEXIS 53220, at *13—she otherwise offers no information about the independent third-party testing on the Product.  *See* Doc. 25 ¶¶ 49–54.  Unlike the allegations in *John* that 89% of all products were defective, or those in *Clinger* that made it reasonable to assume that a manufacturing defect rendered an entire line of products defective, Hernandez makes no allegations sufficient to plausibly show that all or substantially all of the Product contains PFAS.  Indeed, Hernandez does not even offer allegations that would allow the Court to plausibly conclude that 1/6th of the Product contains PFAS, which the *Clinger* court found made it only "speculative—rather than plausible—to conclude" that the Product was defective.  *See* 2023 WL 2477499, at *7.  Rather, she neither states how many bottles of the Product she purchased or from where, nor how many were tested and in what manner.  And, where it is "only 'likely' [a plaintiff] might have purchased mislabeled products," and the plaintiff thus "seems impermissibly to ask the Court to infer an injury for [her]," no standing exists.  *Akridge v. Whole Foods Mkt. Grp., Inc.*, No. 20-cv-10900 (ER), 2022 U.S. Dist. LEXIS 59069, at *17–18 (S.D.N.Y. Mar. 30, 2022).  The Court is therefore unable to conclude that

Hernandez has Article III standing, and Defendants' motion to dismiss for lack of subject-matter jurisdiction is granted.

### 2. *The Court Need Not Decide Defendants' Remaining Arguments*

Because the Court must grant the motion pursuant to Rule 12(b)(1), it will not decide Defendants' arguments with respect to Rule 12(b)(6).

### 3. *Leave to Amend*

The Court will, however, grant Hernandez leave to amend, as she requested (Doc. 30 at 29).  Courts are instructed to "freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (citation omitted); *see also Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-cv10104 (ER), 2023 U.S. Dist. LEXIS 54340, at *10 (S.D.N.Y. Mar. 29, 2023) ("The party opposing the motion to amend bears the burden of proving the claim's futility."). This is a permissive standard since the Federal Rules "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits" of the case.  *Conley v. Gibson*, 355 U.S. 41, 48 (1957).  Moreover, the Second Circuit has counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.  *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015)).

Because this is the Court's first opportunity to highlight the precise defects of Hernandez's pleading, and it is not yet apparent that another opportunity to amend would be futile, the Court will permit her to replead the dismissed claims.

**IV.     CONCLUSION**

For the reasons set forth above, Defendants' motion is GRANTED.  Should Hernandez wish to amend the complaint, she must do so by January 23, 2024.  If she fails to do so, the case will be closed.

The Clerk of Court is respectfully directed to terminate the motion (Doc. 27).

It is SO ORDERED.

Dated:     December 29, 2023
            New York, New York

_____
         EDGARDO RAMOS, U.S.D.J.