UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERTHA HERNANDEZ, individually and on behalf of all other similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>THE WONDERFUL COMPANY LLC and POM WONDERFUL LLC,<br><br>   Defendants. | Case No. 1:23-cv-01242-ER<br><br>Honorable Judge Edgardo Ramos |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

KRISTINA M. DIAZ (*pro hac vice*)
kristina.diaz@roll.com
JOHNNY TRABOULSI (*pro hac vice*)
johnny.traboulsi@roll.com
REID P. DAVIS (*pro hac vice*)
reid.davis@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:     (310) 966-8400
Facsimile:       (310) 966-8810

ELIZABETH A. EDMONDSON
eedmondson@jenner.com
KATE T. SPELMAN (*pro hac vice*)
kspelman@jenner.com
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10034
Telephone:     (212) 891-1606
Facsimile:       (212) 909-0865

*Attorneys for Defendants*
THE WONDERFUL COMPANY LLC and
POM WONDERFUL LLC

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..........................................................3

ARGUMENT ........................................................................................................................4

I.  Plaintiffs Do Not Sufficiently Allege That POM's Labeling Is Materially Misleading to a Reasonable Consumer. ......................................................................4

    A.  The Alleged Representations Would Not Mislead a Reasonable Consumer ...........5

    B.  The Presence of Trace And Inconsistent Amounts of PFAS Is Not Material and Therefore Cannot Support Plaintiffs' Omissions-Based Theory. .....................9

II.  Plaintiffs' Unjust Enrichments Claim is Duplicative and Fails for the Same Reasons as the GBL Claims. ..................................................................................11

III.  Plaintiffs' Negligence Per Se Claim Fails to Allege the Necessary Predicate Statutory Violation. ................................................................................12

IV.  Plaintiffs Fail to Set Forth Sufficient Factual Allegations to Maintain Any Claim Against The Wonderful Company LLC. .....................................................13

CONCLUSION ...................................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Axon v. Florida's Nat. Growers, Inc.*
    813 F. App'x 701 (2d Cir. 2020) .............................................................. 6, 7, 9

*Barton v. Pret A Manger (USA) Ltd.*
    535 F.Supp.3d 225 (S.D.N.Y. 2021)……………………………………….7

*Bildstein v. MasterCard Int'l, Inc.*
    329 F. Supp. 2d 410 (S.D.N.Y. 2004)................................................................ 5, 9

*Byman v. Fam. Dollar Stores, Inc.*
    592 F. Supp. 3d 304 (S.D.N.Y. 2022)……….....……………………………....11

*Cleary v. Philip Morris Inc.*
    656 F.3d 511 (7th Cir. 2011)...……..…………………………………………11

*Fink v. Time Warner Cable*
    714 F.3d 739 (2d Cir. 2013)................................................................ 4, 6

*Frito-Lay North America, Inc. All Natural Litig.*
    No. 12-MD-2413 RRM, 2013 WL 4647512
    (E.D.N.Y. Aug. 29, 2013)................................................................ 14

*General Mills Glyphosate Litig.*
    No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ............................................ 7

*Harris v. Pfizer Inc.*
    586 F. Supp. 3d 231 (S.D.N.Y. 2022)................................................................ 9

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*
    No. 18-6664, 2019 WL 2515919 (N.D. Cal. June 18, 2019)............................................ 7

*Herrington v. Johnson & Johnson Consumer Cos.*
    2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ………..…………………….……..10

*Kommer v. Bayer Consumer Health*
     252 F. Supp. 3d 304 (S.D.N.Y. 2017)................................................................ 5

*Lee v. Mondelez Int'l, Inc.*
    637 F. Supp. 3d 116 (S.D.N.Y. 2022)............................................................ 4, 5

*Magnus v. Fortune Brands, Inc.*, 41 F. Supp. 2d 217
    (E.D.N.Y.1999)…………………………………………………….……………14

*Richburg v. Conagra Brands, Inc.*
    Case No. 22-cv-2420 WL 1818561 (N.D. Ill. Feb. 8, 2023) ................................ 7, 12, 13

*Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*
    441 F. Supp. 3d 1 (S.D.N.Y. 2020) …………...…………………………....…………..11

*Twohig v. Shop-Rite Supermarkets, Inc.*
     519 F. Supp. 3d 154 (S.D.N.Y. 2021)…………………………………………..................... 5

*United States v. Anderson Seafoods, Inc.*
    622 F.2d 157, 159 (5th Cir. 1980)..…………………………………………………………12

*Weinstein v. eBay, Inc.*
        819 F. Supp. 2d 219 (S.D.N.Y. 2011)……………………………….............................. 5

*Zahora v. Orgain LLC*
      No. 21 C 705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021)………………..…………….....5

## **STATUTES**

21 C.F.R. § 101.100(a)(3)(iii) ……………………………………………………………...8, 13

21 C.F.R. § 111.3..……………………………………………………………………………….8

21 U.S.C. §342……....………………………………………………………………...………..12, 13

21 U.S.C. §343……....…………………………………………………………………...…..8, 12, 13

Cal. Health & Saf. Code § 109000……...……………………………………………………..10

NY Agric. & Mkts. Law Section 199-a ……………………………………...………………….12

## INTRODUCTION

This lawsuit is one of a growing number of class actions seeking to hold consumer product companies liable for the alleged presence in their products of a continually expanding list of "microcontaminants" that are unavoidable and "ubiquitous in products and the environment."[1] (Ex. 1, cited in Dkt. No. 24 [Plaintiffs' FAC], fn. 26.)  These substances are not actual *ingredients* in the products at issue, and Plaintiffs make no allegation that Defendants intentionally added the substances to the products or used the substances in manufacturing the products.  (*See, e.g.,* Dkt. No. 30 (admitting that "Plaintiff does not profess to know exactly how these significant amounts of PFAS came to be present in Defendants' products").)  Rather, the compounds in question are known to irregularly migrate into the products (if at all) through soil or water at trace levels that are not known to be harmful to any consumer.  Unsurprisingly, many of these cases have been dismissed at the pleading stage, as was Plaintiff's First Amended Complaint ("FAC").  Now attempting their third bite at the apple, Plaintiffs' Second Amended Complaint ("SAC") again demonstrates their inability to allege plausible and viable claims.

Even assuming as true Plaintiffs' allegations that their testing detected varying types of PFAS microcontaminants (measured in parts per *trillion*) in two samples of POM Wonderful 100% Pomegranate Juice (the "POM Product"), Plaintiffs' claims still necessarily fail as a matter of law because Plaintiffs do not allege facts sufficient to plausibly conclude that POM's labeling is misleading to reasonable consumers.  Specifically, Plaintiffs take issue with Defendants' representations that the POM Product is "All Natural," "100% Pomegranate Juice," from "4

---

[1] As explained further herein, the EPA has recognized that PFAS commonly exist at harmless levels in food, beverage products, and drinking water due to their prevalence in our soil, air, and water systems.  (*See* Ex. 6 (EPA stating, "many PFAS are … present at low levels in a variety of food products and in the environment…. PFAS are found in water, air, fish, and soil at locations across the nation and the globe").)

California Pomegranates." (*See, e.g.,* SAC ¶¶ 2, 29.) But the case law is clear that a reasonable consumer would not consider these advertising statements to be materially misleading based on the inadvertent and irregular occurrence of varying trace chemicals allegedly migrating into the product through the packaging and/or the growing process.

Put simply, POM Wonderful LLC ("POM") accurately represents to consumers that the only *ingredient* in the POM Product is pomegranate juice, which is indisputably natural. Plaintiffs cannot plausibly allege an actionable misrepresentation or omission based on this precisely accurate and wholly true description. Thus, all of Plaintiffs' claims fail for the following reasons:

(i) Plaintiffs' General Business Law ("GBL") 349 and 350 claims fail to the extent they are premised on alleged misrepresentations, as Plaintiffs do not and cannot allege that Defendants misrepresented the ingredients comprising the POM Product;

(ii) Plaintiffs' GBL claims similarly fail to the extent they are premised on alleged omissions, as Plaintiffs do not and cannot plausibly allege materiality in the absence of any basis to conclude that the trace amounts of migratory PFAS purportedly detected in the POM Product — which varied even between the two samples allegedly tested — present risk to human health;

(iii) Plaintiffs' unjust enrichment and negligence claims are derivative and duplicative, and fail for the same reasons as Plaintiffs' GBL claims; and

(iv) Plaintiffs do not and cannot allege facts sufficient to support liability against Defendant The Wonderful Company LLC separate and apart from POM Wonderful LLC.

For these reasons, as further described below, the SAC should be dismissed. Because Plaintiffs have had two prior opportunities to plead a viable claim but have failed to do so, the SAC should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Bertha Hernandez initiated this action on February 14, 2023, asserting seven causes of action against Defendants. (Dkt. No. 1.) Plaintiff's original complaint was based on their testing of a single POM Product that allegedly detected the presence of two types of PFAS, 6:2FTS and PFPeA, at concentrations of 2.5 parts per *trillion* ("ppt") and 6.5 ppt, respectively. (*Id.* ¶ 51.)

Following the parties' letter briefing and a hearing on Defendants' intended motion to dismiss (Dkt. Nos. 6, 13.), Plaintiff Hernandez dropped her previously pled fraud and constructive fraud claims, and amended her complaint in an attempt to cure the deficiencies identified by Defendants. (*See* Dkt. No. 24 [FAC filed June 9, 2023].) Defendants successfully moved to dismiss the First Amended Complaint on the threshold ground that Plaintiff Hernandez failed to set forth allegations concerning her testing of the POM Product (which was not the Product she purchased) sufficient to plead injury in fact.[2] (*See* Dkt. No. 34 [Opinion & Order granting Motion to Dismiss].)

On January 23, 2024, Plaintiffs filed their Second Amended Complaint, which seeks to cure the standing deficiencies by adding a second Plaintiff, Wayne Catalano, along with allegations concerning the testing of the POM Product purchased by Mr. Catalano.[3] Significantly, the POM Product purchased by Mr. Catalano is *not* alleged to contain *either* of the PFAS chemicals allegedly detected in the original sample. Instead, Plaintiffs' testing of Mr. Catalano's product allegedly

---

[2] Because the Court dismissed the First Amended Complaint on standing grounds under Rule 12(b)(1), it did not reach Defendants' arguments with respect to 12(b)(6). (Dkt. No. 34, p. 13.)

[3] Plaintiff's SAC drops the previously pled claims for (i) breach of express warranty; and (ii) Violation of NY Agric. & Mkts. Law Sec. 199-a. The only remaining claims are for violation of the Sections 349 and 350 of the GBL and derivative claims for unjust enrichment and negligence per se.

detected an *entirely different* type of PFAS, known as PFOA, at a concentration of *less than* 1 part per trillion — specifically, 0.192 ppt.[4] (SAC ¶¶ 55, 58.) Plaintiffs' Second Amended Complaint thus confirms there is no regular or consistent level or type of PFAS in the POM Product, necessarily establishing that PFAS are not added as ingredients to the POM Product. (*See also,* Dkt. No. 30 (admitting that "Plaintiff does not profess to know exactly how these significant amounts of PFAS came to be present in Defendants' products").)

While Plaintiffs' Second Amended Complaint arguably addresses the standing deficiency identified in this Court's Order dismissing the First Amended Complaint as to Plaintiff Catalano,[5] the amended allegations do nothing to cure Plaintiffs' separate and independent failure to state a claim under Rule 12(b)(6). Plaintiffs have now had three attempts to plead viable claims, have failed to do so, and have demonstrated that any further leave to amend would be futile. Plaintiffs' claims should be dismissed with prejudice for the following reasons.

## ARGUMENT

**I.     Plaintiffs Do Not Sufficiently Allege That POM's Labeling Is Materially Misleading to a Reasonable Consumer.**

Each of the GBL claims at issue require Plaintiffs to plead, among other things, that Defendants' advertising included misrepresentations or omissions that "were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *accord Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 132

---

[4] PFAS are a diverse category of thousands of distinct chemicals, each with "varying effects and toxicity levels." (Ex. 2.) According to Plaintiffs' own allegations, PFOA is a type of PFAS that is allegedly known to be harmful at certain levels of exposure whereas there exists no guidance suggesting that 6:2FTS or PFPeA present any risk of harm at any levels of exposure. (SAC at ¶¶ 57, 60.)

[5] Plaintiffs have not added or amended any allegations to cure the standing deficiencies this Court found in Plaintiff Hernandez's claims, and therefore Plaintiff Hernandez's claims should be dismissed with prejudice.

(S.D.N.Y. 2022). "A material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Bildstein v. MasterCard Int'l, Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (citations and internal quotation marks omitted). This is an "objective" standard, which is not defined by the unique views of the particular consumer before the Court. *See Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 311 (S.D.N.Y. 2017); *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011).[6] Plaintiffs cannot meet this standard.

### A. The Alleged Representations Would Not Mislead a Reasonable Consumer

Here, Plaintiffs specifically challenge Defendants' representations that the POM Products are "All Natural," "100% pomegranate juice," derived exclusively from "4 California Pomegranates." (*See, e.g.,* SAC ¶¶ 2, 29.) Even assuming that Plaintiffs have sufficiently alleged the presence of PFAS in the POM Products, Plaintiffs have failed to set forth factual allegations showing that the presence of trace amounts of migratory PFAS renders Defendants' representations untrue or materially misleading. Plaintiffs do not allege that Defendants added PFAS to their products, that Defendants used PFAS in their manufacturing process, or that the Products' intended ingredients include anything other than 100% pomegranate juice from concentrate (which, in turn, may or may not have trace amounts of PFAS migrating from the soil or water with which a given batch of pomegranates were grown). In fact, Plaintiffs' pleading

---

[6] The referenced case authorities address GBL §§ 349 and 350 – on which Plaintiffs base their First and Second Counts. Because Plaintiffs' claims for unjust enrichment and negligence are premised on the same alleged misrepresentations or omissions, those claims likewise fail. *See, e.g., Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 165 (S.D.N.Y. 2021) (dismissing claims for negligent misrepresentation and unjust enrichment because plaintiffs "failed to allege that the Product's labeling would be likely to deceive or mislead a reasonable consumer"); *Zahora v. Orgain LLC*, No. 21 C 705, 2021 WL 5140504, at *5 (N.D. Ill. Nov. 4, 2021) (collecting cases and finding that "[a]bsent a plausible allegation of deception," claims for negligent misrepresentation and unjust enrichment also failed).

confirms precisely the opposite given that their testing allegedly detected completely different exceedingly low levels of PFAS chemicals in the two different samples that were tested.[7] (*Compare* SAC ¶ 55 (alleging detection of PFOA at .192 ppt in Plaintiff Catalano's testing), with ¶ 58 (alleging detection of 6:2FTS at 2.5 ppt and PFPeA at 6.5 ppt in Plaintiff Hernandez's testing).) This alleged fact is fatal to any attempt Plaintiffs might make to characterize the alleged PFAS as intentionally added.

Despite failing to allege that PFAS are added *ingredients*, Plaintiffs nonetheless claim that Defendants' labeling is misleading because consumers would "believe that the Product is free from artificial ingredients, including chemical ingredients which are known to be harmful to human health." (SAC ¶ 7.) Plaintiffs' theory of deception should be rejected because nothing about the challenged representations promises the absolute absence of PFAS, which are not an ingredient, and which are recognized to be ubiquitous microcontaminants in our food and environment. (Ex. 1, ("[y]ou cannot avoid [PFAS] as they are ubiquitous in products and the environment.").)

Several courts have considered and dismissed similar allegations based on the incidental occurrence of another microcontaminant – glyphosate, a pesticide. In the glyphosate cases, as here, the plaintiffs attacked the defendants' "natural" labeling statements as misleading because the challenged products allegedly contained trace amounts of a chemical contaminant (i.e. glyphosate). The District Court and Second Circuit rejected this theory of deception in *Axon v. Citrus World, Inc.*, reasoning it was not misleading to call the product "natural" because

---

[7] If Plaintiffs argue that they did or can allege Defendants intentionally added PFAS as ingredients to the POM Product, such argument would be materially inconsistent with the alleged test results referenced in the SAC and thus should be rejected. *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) ("where 'the allegations of [a] [c]omplaint are materially inconsistent with the' evidence a plaintiff relies on to make those allegations, we may'"easily conclude that [p]laintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss.'" (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)).

"[g]lyphosate . . . is not an 'ingredient' added to defendant's products; rather, it is a substance introduced through the growing process." *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018). The Second Circuit held further:

> The presence of glyphosate as a contaminant in Defendant's products, rather than an intentionally-added ingredient, bolsters the conclusion that a reasonable consumer, viewing the brand name "Florida's Natural," would not make assumptions regarding the presence or absence of trace amounts of glyphosate.

*Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020).

Similarly, in *Parks v. Ainsworth Pet Nutrition, LLC*, the plaintiff alleged that the defendant mislabeled dog food as "natural," even though it contained trace amounts of glyphosate. 377 F. Supp. 3d at 241, 244 (S.D.N.Y. 2019). The court dismissed the suit, reasoning that the presence of glyphosate did not render the term "natural" misleading, as "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products." 377 F. Supp. 3d at 247; *see also, Barton v. Pret A Manger (USA) Ltd.*, 535 F.Supp.3d 225, 250 (S.D.N.Y. 2021) ("[T]here is a distinction between contaminants and … substances included in a product as an ingredient."); *In re General Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (finding that "Made with 100% Natural Whole Grain Oats" did not "mean[] that there is no trace glyphosate" in the product, and it would be implausible for a reasonable consumer to "so interpret the label"); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-6664, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (finding that a reasonable consumer would not "understand 'Natural' or 'All Natural Ingredients' to mean the utter absence of residual pesticides").

Similar rationale has been applied to PFAS-related false advertising claims by courts outside of the Second Circuit. In *Richburg v. Conagra Brands, Inc.*, Case No. 22-cv-2420, 2023 WL 1818561 at *7 (N.D. Ill. Feb. 8, 2023), which involved false advertising claims alleging the

presence of PFAS in microwave popcorn bags, the court framed the issue in the following manner:

> Assuming as true that the microwave popping bags contain PFAS, that such PFAS migrates into the popcorn, and that the popcorn subsequently contains non-incidental, harmful PFAS levels, the question is whether reasonable consumers would consider such undisputedly artificial, migratory chemicals to be an "ingredient" in the challenged food products based on the packages' representation that the products contain "only real ingredients" and "100% ingredients from natural sources."

To answer this question, the court referenced the requirements for labelling of "ingredients" under the Food, Drug and Cosmetic Act (the "FDCA"), which specifically exempts from disclosure in packaged food products' ingredient lists certain "[s]ubstances migrating to food from equipment or packaging."[8] *Id.*, citing 21 U.S.C.A. § 343(i); 21 C.F.R. § 101.100(a)(3)(iii). Because the FDCA exempts migratory PFAS from disclosure as an "ingredient," the court concluded that, likewise, "reasonable consumers would not consider PFAS to be an ingredient." 2023 WL 1818561 at *7. Accordingly, the court held that "plaintiffs have not plausibly alleged that reasonable consumers would be deceived by defendant's representations or omissions on the [] products." *Id.*

Analogously here, a reasonable consumer would not understand the challenged representations to communicate anything about the absence of an incidental contaminant that is ubiquitous in virtually all organic matter existing today. Defendants' representations that the Product contains "All Natural" "100% Pomegranate juice" from "4 California Pomegranates" cannot reasonably be interpreted or understood as an absolutist promise that the component

---

[8] In addition to exempting such substances from disclosure in ingredient lists for packaged foods, the FDA expressly defines "ingredient" in the context of dietary supplements (which are regulated as foods) as "any substance that is *used* in the manufacture of a dietary supplement and that is *intended* to be present in the finished batch." 21 C.F.R. § 111.3 (emphasis added). Plaintiffs here do not, and cannot, allege that PFAS is *used* in the manufacturing of POM Products or that PFAS are *intended* to be present in the Products. Indeed, as discussed, the varying and inconsistent results of their product testing suggest precisely the opposite.

pomegranate juice and pomegranates are free from microcontaminants that are omnipresent in the environment. *Axon*, 354 F. Supp. 3d at 183. Plaintiffs' conclusory assertion that consumers would "reasonably believe that the Product is free from artificial ingredients, including chemical ingredients which are known to be harmful to human health" (SAC ¶ 7) either misapprehends the meaning of "ingredient" or misapprehends what a consumer can reasonably expect in a world where "[y]ou cannot avoid [PFAS] as they are ubiquitous in products and the environment." (Ex. 1.) "A plaintiff does not have a claim under the GBL just because she comes away from an advertisement with an incorrect impression," as "[t]hat impression must be reasonably traceable to a misleading statement from the defendant." *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 243–44 (S.D.N.Y. 2022). There is no such traceability here.

Because Plaintiffs are unable to allege any false or materially misleading representation, Plaintiffs' GBL misrepresentation claims must be dismissed.

      **B.**    **The Presence of Trace And Inconsistent Amounts of PFAS Is Not Material and Therefore Cannot Support Plaintiffs' Omissions-Based Theory.**

In addition to the fact that trace, inconsistent levels of migratory PFAS in the POM Products would not render Defendants' advertising representations misleading or untrue, Plaintiffs' complaint fails to set forth sufficient allegations to support their conclusory assertion that the alleged levels of PFAS are actually harmful or present a risk of harm to human health. Absent plausible allegations concerning risk to health, the alleged occurrence of trace amounts of PFAS cannot be considered material to a reasonable consumer as a matter of law and, therefore, cannot support Plaintiffs' omissions-based theory of liability under the GBL. *See Bildstein*, 329 F. Supp. 2d at 414 ("A material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") Put simply, Defendants have no obligation to affirmatively disclose the presence of varying levels and

types of ubiquitous microcontaminants that might exist, if at all, in concentrations that Plaintiffs have not plausibly alleged present any risk to health. *See, e.g.*, *Herrington v. Johnson & Johnson Consumer Cos.*, No. 09-1597, 2010 WL 3448531, at *8 (N.D. Cal. Sept. 1, 2010) (dismissing lawsuit premised on alleged failure to disclose presence of carcinogens in children's bath products and holding that the alleged non-disclosures were not material in the absence of any plausible allegation "that the levels of these substances caused them or their children harm").

Here, Plaintiffs have not and cannot plausibly allege any risk of harm arising from consumption of the POM Products. PFAS are a diverse category of thousands of distinct chemicals, each with "varying effects and toxicity levels." (Ex. 2.) At present, no administrative, regulatory, or peer reviewed scientific guidance exists concerning the levels at which any particular concentration of any particular type of PFAS may present a health risk in consumer packaged food or beverage products. (*See, e.g.,* Ex. 3 ("it is difficult to show that substances directly cause health conditions in humans," and "[m]ore research is needed to better understand the health effects of PFAS exposure.")) Indeed, the FDA affirmatively authorizes the inclusion of certain PFAS in food contact substances, having concluded to a "reasonable certainty" in a "rigorous review" of a continuous, ongoing nature that the authorized PFAS substances pose no risk of harm. (Ex. 4.) Recently enacted legislation in California permits food packaging to contain up to 100 parts per *million* unintended PFAS – *i.e.*, more than a million times greater concentration than the parts per *trillion* allegedly detected in the POM Products. *See* Cal. Health & Saf. Code § 109000.

Plaintiffs' allegations of potential harm rest solely on a non-enforceable and inapplicable interim EPA lifetime health advisory related to PFOA in *drinking water* (SAC ¶ 56), but that advisory level is determined based on cumulative effects of regular consumption at a high rate of

frequency. POM Products – in contrast to drinking water – are ingested by consumers at a much lower frequency and volume, and thus the proposed lifetime advisory levels applicable to drinking water have no application to the categorically and quantitively distinct consumer packaged beverage market. Moreover, the EPA has stated that Plaintiffs' alleged detection level of 0.192 parts per trillion of PFOA (SAC at ¶ 55) is significantly below the detection and quantitation levels that are capable of being reliably detected using current testing methods. (Ex. 5, (setting EPA minimum quantitation and reporting level for PFOA at 4 parts per trillion).) Thus, Plaintiffs are unable to point to any scientific support for their naked conclusion that the levels of PFAS allegedly detected by their testing are "material." (*See*, e.g. SAC ¶ 55.)[9]

Consequently, because Plaintiffs' allegations do not plausibly establish that the presence of trace and inconsistent levels of varying PFAS that are ubiquitous in the environment are material to reasonable consumers, Plaintiffs' GBL claims must be dismissed to the extent they are based on Defendants' alleged failure to disclose.

## II. Plaintiffs' Unjust Enrichment Claim is Duplicative and Fails for the Same Reasons as the GBL Claims.

Plaintiffs' unjust enrichment claim is entirely derivative and duplicative of their GBL claims. Thus, because Plaintiffs cannot establish any predicate violation of the GBL, this derivative claim too must fail. *See Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 316 (S.D.N.Y. 2022) (dismissing unjust enrichment claim premised on same allegations as other claims because "[i]f the unjust enrichment claim is duplicative, and if plaintiff['s] other claims are defective, an unjust enrichment claim cannot remedy the defects") (citation and internal quotation marks omitted); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (where unjust

---

[9] As noted above, *see supra* at fn. 4, Plaintiffs identify *no* guidance suggesting *any* risk of harm associated with the two PFAS they allegedly detected in the first sample of the POM Product: 6:2FTS and PFPeA.

enrichment claim "rests on the same improper conduct alleged in another claim," unjust enrichment claim "will stand or fall" with that claim); *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020).

### III. Plaintiffs' Negligence Per Se Claim Fails to Allege the Necessary Predicate Statutory Violation.

To maintain a claim for negligence per se, Plaintiffs must plead a plausible violation of an underlying statute. Here, Plaintiffs attempt to, but cannot, plead violations of 21 USC §§ 342, 343 and NY Agric. & Mkts. Law Section 199-a to support their negligence per se claim. (SAC ¶¶ 154-157.) Specifically, Plaintiffs assert violations of these statutes based on their allegations that the POM Products are "adulterated" and/or "misbranded." Plaintiffs' claim fails.

As an initial matter, Plaintiffs do not plausibly allege that the POM Products are "adulterated" under these statutes, which define a food as adulterated "[i]f it bears or contains any poisonous or deleterious substance which may render it injurious to health." 21 U.S.C. § 342(a)(1); N.Y. Agric. & Mkts. § 200. "The 'may render' standard has been interpreted to mean that there is a reasonable possibility of injury to the consumer." *United States v. Anderson Seafoods, Inc.*, 622 F.2d 157, 159 (5th Cir. 1980). Plaintiffs have not alleged that they were injured by the Products, or that consumers face a "reasonable possibly of injury" given that Plaintiffs have failed to allege even a plausible *risk* of harm. *See supra*, at p. 10.

Further, Plaintiffs cannot allege that the Products are "misbranded" for the same reasons their GBL claims fail; namely, Plaintiffs fail to identify a misrepresentation on the Product labels or a basis to require disclosure of the alleged presence of PFAS in trace and inconsistent amounts. Further, as noted in the discussion of *Richburg*, *supra* at pp. 7-8, 21 U.S.C. Section 343 of the FDCA is subject to the exemption set forth under 21 C.F.R. § 101.100(a)(3)(iii) applicable to "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are

not food additives as defined in section 201(s) of the act." *Richburg*, 2023 WL 1818561 at *7. Similarly, NY Agric. & Mkts. Law § 199-a is coextensive with the rules governing "misbranded" products under the FDCA, 21 U.S.C. § 343, and therefore subject to the same exemption. Consequently, incidental PFAS microcontaminants that are not intentionally added or used in the manufacturing process (as here) fall within the FDA's exemption of migratory substances, and need not be included on the mandated list of "ingredients" on food packaging. Thus, the alleged existence of such PFAS cannot as a matter of law give rise to a violation of 21 U.S.C. § 343 or, by extension, NY Agric. & Mkts. Law Section 199-a. *Richburg*, 2023 WL 1818561 at *7.

Alternatively, to the extent Plaintiffs intend to argue that Section 199-a sets forth different requirements than its federal law counterpart, the claim is preempted by the Nutrition Labeling & Education Act, which includes a broad express preemption provision directing that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" imposed by federal law. 21 U.S.C. § 343-1(a)(2).

Accordingly, Plaintiffs fail to allege the necessary predicate violations of 21 USC §§ 342, 343 or NY Agric. & Mkts. Law §199-a to support their negligence per se claim, which therefore fails.

## IV. Plaintiffs Fail to Set Forth Sufficient Factual Allegations to Maintain Any Claim Against The Wonderful Company LLC.

Finally, in addition to the above-specified deficiencies inherent in Plaintiffs' claims, Plaintiffs also fail to allege any substantive allegations to support liability against The Wonderful Company LLC, separate and apart from POM Wonderful LLC. Plaintiffs offer only the conclusory statements that "POM Wonderful LLC is a wholly owned subsidiary of The Wonderful Company" and "The Wonderful Company had authority and control over POM Wonderful LLC, including,

*inter alia*, by providing advertising services to create and implement POM Wonderful LLC's marketing and advertising claim." (SAC ¶ 15.) Plaintiffs notably do not allege that The Wonderful Company reviewed, considered, or approved any specific representation on which Plaintiffs' claims are based. Nor do Plaintiffs allege that The Wonderful Company directly sold the POM Product. (*See* SAC ¶ 15, alleging POM Wonderful sells the POM Product.)

Accordingly, Plaintiffs' claims as alleged against The Wonderful Company LLC should be dismissed. *See Magnus v. Fortune Brands, Inc.*, 41 F. Supp. 2d 217, 224 (E.D.N.Y.1999) (holding that plaintiffs failed to allege specific facts to establish parent companies' direct liability because the parent companies did not manufacture the product at issue); *In re Frito-Lay North America, Inc. All Natural Litig.*, No. 12-MD-2413 RRM, 2013 WL 4647512 at *5 (E.D.N.Y. Aug. 29, 2013) (finding "plaintiffs' allegations that [parent company] 'markets, advertises and distributes' the products as insufficient to establish direct liability").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiffs' claims with prejudice and without leave to amend.

Dated: March 15, 2024

Respectfully submitted,

ROLL LAW GROUP PC

By:  /s/ Reid P. Davis
REID P. DAVIS (*pro hac vice*)
reid.davis@roll.com

JENNER & BLOCK LLP
ELIZABETH A. EDMONDSON
eedmondson@jenner.com
KATE T. SPELMAN (*pro hac vice*)
kspelman@jenner.com

*Attorneys for Defendants*
THE WONDERFUL COMPANY LLC
and POM WONDERFUL LLC

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a copy of the foregoing document was filed on March 15, 2024 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  March 15, 2024          By:  /s/ Reid P. Davis
                    Reid P. Davis