UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERTHA HERNANDEZ, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE WONDERFUL COMPANY LLC and POM WONDERFUL LLC,<br><br>Defendants. | Case No. 1:23-cv-01242-ER<br><br>Honorable Judge Edgardo Ramos |

**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

KRISTINA M. DIAZ (*pro hac vice*)
kristina.diaz@roll.com
JOHNNY TRABOULSI (*pro hac vice*)
johnny.traboulsi@roll.com
REID P. DAVIS (*pro hac vice*)
reid.davis@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:     (310) 966-8400
Facsimile:      (310) 966-8810

ELIZABETH A. EDMONDSON
eedmondson@jenner.com
KATE T. SPELMAN (*pro hac vice*)
kspelman@jenner.com
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10034
Telephone:     (212) 891-1606
Facsimile:      (212) 909-0865

*Attorneys for Defendants*
THE WONDERFUL COMPANY LLC and
POM WONDERFUL LLC

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.     Plaintiffs Do Not Sufficiently Allege That POM's Labeling Is Materially Misleading to a Reasonable Consumer.................................................................2

    A.     The Reasonable Consumer Analysis Can And Should Be Performed at the Pleading Stage...............................................................................................2

    B.     The Glyphosate Cases Support Dismissal At the Pleadings Stage As a Matter of Law .................................................................................................3

    C.     *Richburg v. ConAgra Brands, Inc.* Is Indistinguishable And Further Supports Dismissal..........................................................................................5

    D.     Plaintiffs' Additional Opposition Cases Are Distinguishable .....................7

II.     Plaintiffs' Unjust Enrichment Claim Is Duplicative and Fails for the Same Reasons as the GBL Claims..................................................................................7

III.     Plaintiffs' Negligence Per Se Claim Fails to Allege the Necessary Predicate Statutory Violation................................................................................................8

IV.     Plaintiffs Fail to Set Forth Sufficient Factual Allegations to Maintain Any Claim Against The Wonderful Company LLC. .............................................................9

CONCLUSION.....................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Axon v. Florida's Nat. Growers, Inc.*
    813 F. App'x 701 (2d Cir. 2020) ...................................................................2, 3, 4

*Bounasera v. Honest Co., Inc.*
    208 F. Supp. 3d 555 ..............................................................................................3

*Bynum v. Fam. Dollar Stores, Inc.*
    592 F. Supp. 3d 304 (S.D.N.Y. 2022)...................................................................8

*Duran v. Henkel of Am., Inc.*
    450 F. Supp. 3d 337 (S.D.N.Y. 2020)...............................................................2, 3

*Grossman v. Simply Nourish Pet Food Co. LLC*
    516 F. Supp. 3d 261 (E.D.N.Y. 2021) ..................................................................7

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*
    148 F. Supp. 3d 285 (S.D.N.Y. 2015)...................................................................2

*Parks v. Ainsworth Pet Nutrition, LLC*
    377 F. Supp. 3d at 241 (S.D.N.Y. 2019)...........................................................2, 4

*Petrosino v. Stearn's Prod., Inc.*
    No. 16-cv-7735 (NSR), 2018 WL 1614349  (S.D.N.Y. Mar. 30, 2018) ................7

*Richburg v. ConAgra Brands, Inc.*
    Case No. 22-cv-2420 WL 1818561 (N.D. Ill. Feb. 8, 2023) ........................ passim

*Segedie v. Hain Celestial Grp., Inc.*
    No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *29 (S.D.N.Y. May 7, 2015) ...................................................................................................................3, 7

*United States v. Anderson Seafoods, Inc.*
    622 F.2d 157 (5th Cir. 1980) ................................................................................9

**STATUTES**

21 C.F.R. § 101.100(a)(3)(iii)............................................................................................9

21 U.S.C. § 343..................................................................................................................9

21 U.S.C. § 342............................................................................................................8, 10

NY Agric. & Mkts. Law § 199-a .......................................................................................9

NY Agric. & Mkts. Law § 200 ..........................................................................................8

Cal. Health & Saf. Code § 109000 ....................................................................................6

## INTRODUCTION

Plaintiffs' Second Amended Complaint should be dismissed based on (among other defects) the dispositive fact that Plaintiffs cannot and do not allege that PFAS are *intentionally* added as *ingredients* in the POM Product. To the contrary, Plaintiffs' pleading confirms that no specific types of PFAS are consistently present in the POM Products at any detectable level given that Plaintiffs' testing allegedly found different types and (exceedingly low) concentrations of PFAS chemicals in the two samples they tested.[1] Plaintiffs' opposition does not even attempt to address this dispositive fact. The controlling case law dictates that a reasonable consumer would not consider the inadvertent occurrence of varying types and levels of migratory PFAS to be inconsistent with POM Wonderful LLC's ("POM") labeling of the POM Products as "All Natural," "100% pomegranate juice," derived exclusively from "4 California Pomegranates." (*See, e.g.,* SAC ¶¶ 2, 29.)

In their opposition, Plaintiffs fundamentally fail to understand or acknowledge the critical distinction between an *ingredient* and a migratory microcontaminant that is not intentionally added to the end product. Virtually every argument asserted, and every case authority cited, in Plaintiffs' opposition is predicated on the distinguishable factual scenario in which a defendant manufacturer intentionally *added* some synthetic *ingredient* that allegedly rendered the defendant's "natural" labeling misleading. As detailed below, the case authorities concerning intentionally added synthetic ingredients are inapposite to the present alleged facts, whereas the analogous cases concerning inadvertent microcontaminants uniformly support dismissal.

Put simply, POM accurately represents to consumers that the only *ingredient* in the POM Product is pomegranate juice, which is indisputably natural. Plaintiffs cannot plausibly allege an actionable misrepresentation or omission based on this accurate and wholly true description. Consequently, each of Plaintiffs' claims should be dismissed.

---

[1] *Compare* SAC ¶ 55 (alleging detection of PFOA at .192 ppt in Plaintiff Catalano's testing), with ¶ 58 (alleging detection of 6:2FTS at 2.5 ppt and PFPeA at 6.5 ppt in Plaintiff Hernandez's testing).

# ARGUMENT

I. **Plaintiffs Do Not Sufficiently Allege That POM's Labeling Is Materially Misleading to a Reasonable Consumer**

   A. **The Reasonable Consumer Analysis Can And Should Be Performed at the Pleading Stage**

As a threshold matter, Plaintiffs' cited cases expressly acknowledge that the reasonable consumer analysis *can* be (and regularly is) performed at the pleading stage. *See, e.g., Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) ("it is possible for a court to decide this question as a matter of law…"); *Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("A court may make [the reasonable consumer determination] as a matter of law.")  Whether the analysis is ultimately resolvable as a question of law turns on the allegations at issue.

As concerns the present litigation, Defendants' case authorities establish that the reasonable consumer analysis is routinely resolved as a matter of law where GBL claims turn on the presence of microcontaminants, as distinguished from intentionally added ingredients. *See, e.g., Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) (affirming granting of motion to dismiss and expressly distinguishing cases involving "allegations that the defendant *added* unnatural ingredients to its products" (emphasis in original)); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d at 241, 247 (S.D.N.Y. 2019) (granting motion to dismiss reasoning that a reasonable consumer "would not be so absolutist" as to require zero-tolerance for microcontaminants).

By contrast, Plaintiffs' cited cases in which courts found that issues of fact precluded resolution at the pleading stage all involved allegations that manufacturers *intentionally added* synthetic ingredients to their products that rendered labeling claims misleading. *See*, *e.g.*, *Duran*, 450 F. Supp. 3d 337 (involving allegations that manufacturer of hair gel advertised not to cause "flaking" intentionally added a chemical, PVP, known to cause flaking); *Bounasera v. Honest Co., Inc.* 208 F. Supp. 3d 555 (involving allegations that manufacturer of hair

conditioning and detangling product advertised as free from harsh chemicals intentionally added synthetic ingredients (not microcontaminants)); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *29 (S.D.N.Y. May 7, 2015) (involving allegations that home care products included intentionally added synthetic ingredients (not microcontaminants)).

In sum, cases that have challenged "natural" labeling claims based on the alleged presence of *unintended* microcontaminants have routinely been dismissed as a matter of law at the pleadings stage, whereas cases alleging such claims based on the presence of *intentionally* added synthetic ingredients have often been deemed to raise questions of fact. Because Plaintiffs in the present case do not and cannot allege that Defendants *intentionally* add PFAS as *ingredients* to the POM Product, the reasonable consumer analysis can and should be resolved as a matter of law on this Motion to Dismiss.

**B.    The Glyphosate Cases Support Dismissal At the Pleadings Stage As a Matter of Law**

Defendants' move to dismiss based, in part, on several analogous cases involving alleged glyphosate contamination, in which New York District Courts and the Second Circuit consistently concluded that it was not misleading to label a product "natural" because "[g]lyphosate . . . is not an 'ingredient' added to defendant's products; rather, it is a substance introduced through the growing process." *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018). Accordingly:

> The presence of glyphosate as a contaminant in Defendant's products, rather than an intentionally-added ingredient, bolsters the conclusion that a reasonable consumer, viewing the brand name "Florida's Natural," would not make assumptions regarding the presence or absence of trace amounts of glyphate.

*Axon*, 813 F. App'x at 705; *see also*, *Parks*, 377 F. Supp. 3d at 241 ("a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products.").

Plaintiffs' Opposition attempts to distinguish these dispositive and controlling glyphosate

cases based on the inapposite assertion that the "pesticides at issue in those cases were undeniably linked to agricultural processes" and "[r]easonable consumers understand that pesticides are commonly used in the production of agricultural products." (Opp., p. 7.) This rationale was never discussed or endorsed by the courts deciding the glyphosate cases, but instead was invented anew by Plaintiffs here.

Further, in making this argument, Plaintiffs concede that the occurrence of incidental synthetic chemicals does not render "natural" labeling misleading under the GBL, so long as there exists a reasonable basis for consumers to understand the possibility that such microcontamination could occur. Yet Plaintiffs utterly fail to address the FDA's judicially noticeable recognition that "[y]ou cannot avoid [PFAS] as they are ubiquitous in products and the environment" and "PFAS are … present at low levels in a variety of food products and in the environment…. PFAS are found in water, air, fish, and soil at locations across the nation and the globe." (RJN Exs. 1, 6.)[2] Thus, Plaintiffs' attempt to distinguish the glyphosate cases necessarily fails because a reasonable consumer would just as readily recognize the possibility that glyphosate microcontamination could result from the growing process as they would recognize the possibility that PFAS microcontamination could result from the chemicals' ubiquitous presence in air, soil, and water.

Plaintiffs relatedly argue that the glyphosate cases are distinguishable based on the alleged fact that "PFAS contamination is completely avoidable and … can be removed from a product by a manufacturer. Indeed, many food purveyors and manufacturers have committed to eliminating PFAS in their products." (Opp., fn.1, citing https://toxicfreefuture.org/mind-the-store/retailers-committing-to-phaseout-pfas-as-a-class-in-food-packaging-and-products.) In addition to the fact that this allegation does not appear in the pleadings, Plaintiffs' citation utterly fails to support their assertion. Instead, the referenced website identifies manufacturers and retailers who have pledged to phase out their use of *intentionally added* PFAS in the production

---

[2] Plaintiffs have not opposed Defendants' Request for Judicial Notice.

of food *packaging* and *textiles*. Nothing on the cited page remotely suggests that it is possible to eliminate the *unintentional* migration of PFAS into food and beverage products resulting from contaminated water, soil, or air. To the contrary, the responsible regulatory agencies have stated, "PFAS can migrate into the soil, water, and air. Most PFAS (including PFOA and PFOA) *do not break down, so they remain in the environment.*" (RJN, Ex. 3 (emphasis added); *see also* Ex. 4 ([PFAS'] persistence in the environment means that PFAS from past and current uses have resulted in increasing levels of contamination of the air, water, and soil."); Ex. 5 ("[PFAS] remain in the environment due to their persistence and lack of degradation.") Thus, Plaintiffs' attempt to distinguish the glyphosate cases on the basis that PFAS contamination is avoidable is unsupported and inconsistent with judicially noticeable facts.

Accordingly, the glyphosate cases are directly analogous to the microcontamination allegations at issue here and support dismissal.

        **C.**    ***Richburg v. ConAgra Brands, Inc.* Is Indistinguishable And Further Supports Dismissal**

Applying similar reasoning as the New York courts in the glyphosate cases, *Richburg v. ConAgra Brands, Inc.* held, "plaintiffs have not plausibly alleged that reasonable consumers would be deceived by defendant's representations or omissions on the [] products" at issue based on the presence of migratory PFAS. *Richburg v. ConAgra Brands, Inc.*, Case No. 22-cv-2420, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023).

Plaintiffs' Opposition argues that "*Richburg* is completely distinguishable" (Opp., p. 8) based on the fact that Plaintiffs here have alleged "the levels of PFAS present in the Product are significant by any reasonable measure." (Opp., p 7.) There are several flaws in Plaintiffs' argument. First, the plaintiffs in *Richburg* – like Plaintiffs here – made exactly the same conclusory allegation that the level of PFAS detected in the microwave popcorn product was "significant." *Richburg*, 2023 WL 1818561 at *2 ("Plaintiffs claim that defendant's products

contain a 'significant level of PFAS.'")³  Thus, the *Richburg* allegations in this regard were in fact completely *in*distinguishable.  Notwithstanding this conclusory allegation of "significance," *Richburg* found no questions of fact, and dismissed the plaintiff's complaint with prejudice.

Second, contrary to their opposition argument, Plaintiffs have failed to identify *any* measure (much less a reasonable one) by which the varying levels, of different types, of allegedly detected PFAS in the POM Products could be considered significant.  Plaintiffs' naked assertions regarding the dangers of the varying types and concentrations of PFAS purportedly detected are rendered implausible by the fact that no administrative or regulatory guidance exists concerning the levels at which any particular concentration of any particular type of PFAS may present a health risk in consumer packaged food or beverage products.  (*See, e.g.,* Ex. 3 ("it is difficult to show that substances directly cause health conditions in humans," and "[m]ore research is needed to better understand the health effects of PFAS exposure.")).

Rather, the opposite is true: the FDA affirmatively authorizes the inclusion of certain types of PFAS in food contact substances, having concluded to a "reasonable certainty" in a "rigorous review" of a continuous, ongoing nature that the authorized PFAS substances pose no risk of harm.  (Ex. 4.)  And recently enacted legislation in California permits food packaging to contain up to 100 parts per *million* unintended PFAS – *i.e.*, more than a million times greater concentration than the few parts per *trillion* allegedly detected in the POM Products.  *See* Cal. Health & Saf. Code § 109000.  Put simply: Plaintiffs have not alleged any plausible basis by which to determine that the presence of PFAS in the POM Products is "significant."

Accordingly, like in *Richburg* (and the glyphosate cases), Plaintiffs' conclusory, unsupported allegations concerning the "significance" of the varying levels and types of PFAS allegedly detected are not sufficient to avoid dismissal.  Plaintiffs have merely alleged that varying types of PFAS might exist, at varying concentrations, as a result of unintended microcontamination, which is insufficient to state a plausible claim under the GBL.

---

³ The plaintiff in *Richburg* was represented by the same counsel representing Plaintiffs here.  Thus, unsurprisingly, the allegations in the complaints there and here are strikingly similar.

### D. Plaintiffs' Additional Opposition Cases Are Distinguishable

In addition to Plaintiff's unpersuasive attempts to distinguish the glyphosate and *Richburg* cases, Plaintiffs' opposition cites to several cases in support of their argument that a reasonable consumer would interpret POM's labeling to promise the complete absence of migratory PFAS. These cases are readily distinguishable on the basis that each involves manufacturers *intentionally* adding allegedly synthetic *ingredients* to their products. *See Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 279-80 (E.D.N.Y. 2021) (finding that "natural" labeling may be misleading where pet food manufacturer intentionally added synthetic niacin, thiamine mononitrate, riboflavin, citric acid, tocopherol, calcium carbonate, folic acid, manganese sulfate, ascorbic acid, xantham gum, potassium chloride, tricalcium phosphate, dicalcium phosphate, zinc oxide, and glycerin); *Petrosino v. Stearn's Prod., Inc.*, No. 16-cv-7735 (NSR), 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) (same finding where cosmetics products labeled as "natural" contained "22 synthetic and/or artificial ingredients"); *Segedie*, 2015 U.S. Dist. LEXIS 60739, at *29 (same finding where home care products included intentionally added synthetic ingredients (not microcontaminants)).

In contrast to these cases, Plaintiffs here do not and cannot allege that Defendants *intentionally* added PFAS to the POM Products (or, for that matter, that any particular PFAS are consistently present in POM Products at any detectable level). Because the glyphosate and *Richburg* cases conclusively demonstrate that unintended microcontaminants are treated differently from intended ingredients for purposes of conducting a "reasonable consumer" analysis at the pleading stage, each of Plaintiffs' cited cases lacks application here.[4]

### II. Plaintiffs' Unjust Enrichment Claim Is Duplicative and Fails for the Same Reasons as the GBL Claims.

Plaintiffs' opposition argues that the unjust enrichment claim is not duplicative of the GBL claim because the latter requires "proof that a defendant's acts are directed to consumers."

---

[4] Plaintiffs' assertion that materiality is "not a separate element" under the GBL (Opp., p. 8) is irrelevant, as Plaintiffs cannot satisfy the reasonable consumer test they admit controls here.

(Opp., at p. 11.)  Defendants concede that their marketing and labeling statements are directed at consumers, and this element is not disputed in the Motion to Dismiss.

Because the unjust enrichment claim is otherwise duplicative and coextensive with the remaining elements of the GBL claim, the unjust enrichment claim fails for the reasons stated above.  *See Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 316 (S.D.N.Y. 2022) ("[i]f the unjust enrichment claim is duplicative, and if plaintiff['s] other claims are defective, an unjust enrichment claim cannot remedy the defects") (citation and internal quotations omitted).

### III. Plaintiffs' Negligence Per Se Claim Fails to Allege the Necessary Predicate Statutory Violation.

Plaintiffs' opposition additionally fails to set forth any authority to support the viability of their claim for negligence per se based on the alleged violation of an underlying statute.

First, Plaintiffs argue the POM Products are "adulterated" under 21 U.S.C. § 342(a)(1) and N.Y. Agric. & Mkts. § 200 because PFOA is a "known carcinogen" and therefore necessarily "may render" the POM Product injurious to health.  This argument ignores the truism that the "dose makes the poison."[5]  The fact that both the FDA and EPA allow tolerances for PFOA and PFAS in food packaging and drinking water directly undermines Plaintiffs' baseless advocacy for a zero-tolerance absolutist standard.  (*See, e.g.*, RJN Ex. 5, SAC ¶ 56 (both referencing EPA advisory levels for drinking water.))  Plaintiffs do not cite any regulatory advisory or guidance, or any other factual basis, to suggest the type and concentration of PFAS allegedly detected in the POM Products (as distinguished from drinking water) presents any health risk or is potentially carcinogenic at the levels detected.  *See United States v. Anderson Seafoods, Inc.*, 622 F.2d 157, 159 (5th Cir. 1980) ("The 'may render' standard has been interpreted to mean that there is a reasonable possibility of injury to the consumer.")

Second, Plaintiffs argue the POM Products are "misbranded" under 21 U.S.C. § 343, and that the Court should not apply the exemption set forth under 21 C.F.R. § 101.100(a)(3)(iii)

---

[5] Additionally, glyphosate – like PFAS – is a "known carcinogen," yet this fact did not give the New York courts any pause in dismissing the above-discussed cases.

applicable to "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are not food additives as defined in section 201(s) of the act." Plaintiffs' articulated rationale is that Defendants have not proven that the PFAS in the product occurred incidentally. But this is not Defendants' burden. Rather, it is Plaintiffs' burden to plead that the detected PFAS were intentionally added, which Plaintiffs plainly cannot do.

Because incidental PFAS microcontaminants are not alleged to have been intentionally added or used in the manufacturing process, they fall within the FDA's exemption of migratory substances, and need not be included on the mandated list of "ingredients" on food packaging. *Richburg*, 2023 WL 1818561 at *7 (finding that a reasonable consumer would not consider incidental PFAS to be an "ingredient" because PFAS are exempted from inclusion on a product ingredient list under 21 C.F.R. § 101.100(a)(3)(iii)). Thus, the existence of incidental migratory PFAS cannot as a matter of law give rise to a violation of 21 U.S.C. § 343 or, by extension, NY Agric. & Mkts. Law Section 199-a.

Accordingly, Plaintiffs fail to allege predicate violations of 21 U.S.C. §§ 342, 343 or NY Agric. & Mkts. Law §199-a to support their negligence per se claim, which therefore fails.

**IV.    Plaintiffs Fail to Set Forth Sufficient Factual Allegations to Maintain Any Claim Against The Wonderful Company LLC.**

Plaintiffs' opposition confirms the absence of actionable conduct on the part of The Wonderful Company LLC in the production, labeling, or marketing of the POM Products. Plaintiffs' only response is to cite SAC Paragraph 63, which in turn references The Wonderful Company LLC's website. (Opp., p. 11.) However, the referenced website merely identifies POM Wonderful LLC as a brand owned by The Wonderful Company LLC, and each of the statements referenced in Plaintiffs' opposition about "proprietary pressing equipment" and "guarantee[ing] pomegranate perfection in each bottle" are clearly attributed to POM Wonderful. (*See* https://www.wonderful.com/brands/pom/.)

By failing to address the argument raised in Defendants' moving papers, Plaintiffs concede the absence of allegations that The Wonderful Company LLC reviewed, considered, or

approved any specific representation on which Plaintiffs' claims are based, and did not directly sell the POM Product.  (*See* SAC ¶ 15, alleging POM Wonderful LLC sells the POM Product.) Accordingly, Plaintiffs' claims against The Wonderful Company LLC should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiffs' claims with prejudice and without leave to amend.


Dated:  April 12, 2024

Respectfully submitted,

ROLL LAW GROUP PC

By:  _____/s/ Reid P. Davis_____
    REID P. DAVIS (*pro hac vice*)
    reid.davis@roll.com

JENNER & BLOCK LLP
    ELIZABETH A. EDMONDSON
    eedmondson@jenner.com
    KATE T. SPELMAN (*pro hac vice*)
    kspelman@jenner.com

*Attorneys for Defendants*
THE WONDERFUL COMPANY LLC
and POM WONDERFUL LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on April 12, 2024 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  April 12, 2024

By: /s/ Reid P. Davis
Reid P. Davis