UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BERTHA HERNANDEZ *and*
WAYNE CATALANO, individually
and on behalf of all others similarly
situated,

                              Plaintiffs,

            – *against* –

THE WONDERFUL COMPANY LLC
*and* POM WONDERFUL LLC,

                              Defendants.

**OPINION & ORDER**

23-cv-1242 (ER)

RAMOS, D.J.:

          Bertha Hernandez and Wayne Catalano (together, "Plaintiffs") brought this putative class action against The Wonderful Company LLC and its wholly owned subsidiary POM Wonderful LLC ("POM") (together, "Defendants") alleging violations of consumer protection laws based on the presence of certain synthetic chemicals in pomegranate juice produced, marketed, and sold by Defendants.  Doc. 1.  Before the Court is Defendant's motion to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. 42.  For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

I.       **BACKGROUND**

          **A. Factual Background.**

          The Court presumes the Parties' familiarity with the relevant facts as set forth in the Court's prior opinion granting dismissal without prejudice.  *See Hernandez v. Wonderful Company LLC*, No. 23-cv-1242 (ER), 2023 WL 9022844, at *1–2 (S.D.N.Y. Dec. 29, 2023).  The Court recounts here only those facts necessary to resolve the instant motion.

1. *The Parties*

Hernandez and Catalano are both citizens and residents of New York.  Doc. 36 ¶¶ 12–13.  The Wonderful Company is a privately held $5 billion company that is "committed to offering high-quality, healthy brands and helping consumers make better choices, every day."  *Id*. ¶¶ 15, 19.  POM is a wholly owned subsidiary of The Wonderful Company.  *Id*. ¶ 20.  Defendants manufacture and sell POM 100% Pomegranate Juice ("the Product") at mass market retailers and grocery stores throughout the United States. *Id*. ¶¶ 5, 24.

2. *The Product's Labeling, Packaging, and Advertising*

The Product is a ready-to-drink juice which is uniformly represented as a "healthy, All Natural beverage."  *Id*. ¶ 25.  Plaintiffs allege that the Product's packaging is replete with representations designed to convince consumers of its health benefits.  *Id*. ¶ 26. Such representations include:

- The front label of the Product describes it as an "Antioxidant Superpower." *Id*. ¶ 27.
- The cap on the Product reads "100% POMEGRANATE JUICE" and bears the slogan "Drink It Daily.  Feel It Forever."  *Id*. ¶ 28.
- The back label states the Product includes "4 California Pomegranates," "No Sugar Added," and "100% Juice From 4 California Pomegranates All Natural."  *Id*. ¶ 29.
- The only ingredient listed on the Product's packaging is "100% pomegranate juice from concentrate."  *Id*.

In addition, Plaintiffs claim that Defendants' website represents that the Product is "Tree to Table" and links to scientific studies purporting to demonstrate that the Product is a healthy choice for consumers; further, Defendants' social media campaigns also emphasize that the Product is a source of antioxidants, describing the Product as "Home of the Antioxidant Superpowers."  *Id*. ¶ 30–32.

Contrary to Defendants' representations that the Product is "All Natural," Plaintiffs allege that it actually contains per– and polyfluoroalkyl substances ("PFAS"),

and the Product does not disclose the presence of PFAS—or any other synthetic chemical—in its ingredients. *Id.* ¶¶ 2, 8.

### 3. PFAS

PFAS are synthetic chemicals harmful to humans and the environment. *Id.* ¶ 36. PFAS are also sometimes referred to as "forever chemicals" because they bioaccumulate, or build up in the body over time, and are harmful even in small doses. *Id.* ¶ 38. Because PFAS are, by definition, man-made, they are not "natural." *Id.* ¶ 37.

PFOA—a specific type of PFAS—is widely thought to be the most dangerous PFAS. *Id.* ¶ 45. The International Agency for Research on Cancer of the World Health Organization has determined that "PFOA is carcinogenic to humans . . . on the basis of sufficient evidence for cancer in experimental animals and strong mechanistic evidence (for epigenetic alterations and immunosuppression) in exposed humans." *Id.* ¶ 46.

### 4. Plaintiffs' Claims

Plaintiffs allege that they purchased and consumed the Product on numerous occasions at various retail stores in New York. *Id.* ¶¶ 93–94. Hernandez claims she purchased the Product numerous times within the class period at retail stores in New York, and specifically, in July 2022, purchased the Product at a Stop & Shop in New York. *Id.* at 93. The July purchase took place at approximately the "same time the same Product was collected for independent testing" conducted prior to filing this matter. *Id.* Hernandez claims that, "since independent testing conducted on these samples . . . revealed the presence of harmful levels of PFAS, it is more than likely that contamination of [the] Product is widespread, especially given the results of the testing conducted on Plaintiff Catalano's purchased [P]roduct." *Id.*

Catalano alleges that he also purchased and consumed the Product in 2023 at a Stop & Shop in Poughkeepsie New York. *Id.* ¶ 94. Catalano then conducted independent

third-party testing[1] on the Product that he purchased, allegedly revealing very high levels of PFOA, specifically .192 parts per trillion (ppt) of PFOA.  *Id.* ¶¶ 55, 94.  Catalano claims that this number is forty-eight (48) times the lifetime advisory levels identified by the Environmental Protection Agency's ("EPA") health advisory for drinking water.  *Id.* ¶ 57.

Plaintiffs together claim that testing performed on the "other sample Products similar to the products purchased by [them] also detected material levels of PFAS in the Product, including:  2.5 [ppt] of 1H, 1H, 2H, 2H–perfluorooctane sulfonic acid ('6:2FTS')[,] and 6.5 ppt of Perfluoron–pentanoic acid ('PFPeA')."  *Id.* ¶ 58.  From this testing, the Plaintiffs conclude that the amount of PFAS in the Product is significant and not limited to just one bottle, thus "expos[ing] hundreds of thousands of unsuspecting consumers to toxic synthetic chemicals in direct contradiction to their uniform 'All Natural' and healthy label claims."  *Id.* ¶¶ 58–59.

Plaintiffs claim that they reasonably relied on the "All Natural" and healthy label claims in deciding to purchase the Product, and that they would not have purchased the Product, or would not have purchased it on the same terms, if the true facts had been known.  *Id.* ¶ 95.  Thus, as a direct result of Defendants' material misrepresentations and omissions, Plaintiffs claim to have suffered, and continue to suffer, economic injuries.  *Id.* ¶ 96.

**B. Procedural Posture.**

Hernandez initially filed the Complaint as the sole plaintiff on February 14, 2023, and filed the First Amended Complaint ("FAC") on June 9, 2023.  Doc. 1; Doc. 24.  Defendants filed a motion to dismiss the FAC on June 30, 2023 pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing, and Rule 12(b)(6) for failure to state a

---

[1] Catalano's testing was conducted by Enalytic Analytical Testing Laboratory using LCMSMS (liquid chromatography tandem mass spectrometry) in accordance with accepted industry standards for detecting the presence of PFAS.  *Id.* ¶ 54.

claim.  Doc. 27.  In their motion, Defendants requested the Court to take judicial notice of certain exhibits, which Hernandez opposed.  Doc. 29; Doc. 31.  In deciding the motion, the Court determined that it could take notice of the documents proposed by Defendants for the existence of agency regulatory guidance on PFAS.  *Hernandez*, 2023 WL 9022844, at *4.  On December 29, 2023, the Court granted the Defendants' motion pursuant to Rule 12(b)(1) and allowed Hernandez leave to file the SAC.  *Id*. at *7.  Because the Court granted the motion pursuant to Rule 12(b)(1), it did not decide Defendants' arguments with respect to Rule 12(b)(6).  *Id*.

On January 24, 2024, Hernandez filed the SAC, adding Catalano as a plaintiff. Doc 36.  The SAC alleges (1) violations of the New York Deceptive Trade Practice Act (New York General Business Law §§ 349 and 350) ("GBL"); (2) negligence per se due to violations of the Food Drug and Cosmetics Act ("FDCA") (21 U.S.C. §§ 342 and 343) and Section 199–a of the New York Agriculture and Markets Law ("N.Y. Agric. & Mkts. Law"); and (3) unjust enrichment.  Doc. 36 ¶¶ 130–68.  Defendants now move to dismiss the SAC, arguing that Plaintiffs have failed to state a claim pursuant to Rule 12(b)(6).[2]

## II.    LEGAL STANDARDS

### A.  Failure to State a Claim Pursuant to Rule 12(b)(6).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the

---

[2] While Defendants do not formally move to dismiss Hernandez's claims for lack of standing—and concede that the "[SAC] arguably addresses the standing deficiency identified in . . . the [FAC]," Doc. 43 at 4—they state in a footnote that, "Plaintiffs have not added or amended any allegations to cure the standing deficiencies this Court found in . . . Hernandez's claims, and therefore [her] claims should be dismissed with prejudice,"  Doc. 43 at 4, n.5.  The Court need not evaluate arguments that are "so drastically underdeveloped, particularly when they are raised only in a footnote."  *See Bruninger v. Williams*, No. 20 Civ. 7033 (JPC), 2023 WL 4211030 at *5, n.3 (S.D.N.Y. June 27, 2023); *see also Niagra Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) ("An argument mentioned only in a footnote is not adequately raised and need not be considered.").  Because Defendants have failed to advance any non-perfunctory argument regarding Hernandez's standing, the Court deems this issue waived.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litiation.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint." *Doe v. N.Y. Univ.*, No. 20 Civ. 1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

III.    **DISCUSSION**

**A.  Defendants' Request for Judicial Notice is Granted**

In support of their motion to dismiss, Defendants submit as exhibits:  (1) a webpage from healthline.com titled "How to Reduce Your Exposure to PFAS:  the Hidden Toxic 'Forever Chemicals,'" which Hernandez cited in the FAC; (2) a webpage from the EPA titled "Our Current Understanding of the Human Health and Environmental Risks of PFAS"; (3) a webpage from the Agency for Toxic Substances and Disease Registry ("ATSDR") titled "Per– and Polyfluoroalkyl Substances (PFAS) and Your Health; What are PFAS?"; (4) a webpage from the U.S. Food and Drug Administration titled "Per– and Polyfluoroalkyl Substances (PFAS)"; (5) a webpage from the EPA titled "Questions and Answers:  Drinking Water Health Advisories for PFOA, PFOS, GenX Chemicals and PFBS"; and (6) a webpage from the EPA titled "PFAS Explained."  Doc. 44 at 2–3.

The Court previously granted Defendant's request for judicial notice of Exhibits 1–4, and 6.  *Hernandez*, 2023 WL 9022844, at *3–4.  Defendants now request that the Court take judicial notice of Exhibit 5 as well.  *See* Doc. 44.  This request for judicial notice was not contested by Plaintiffs in their memorandum in opposition.  *See* Doc. 45. Accordingly, the Court will take judicial notice of the six exhibits for the fact of their existence (i.e., for the fact that the three agencies have issued regulatory guidance on PFAS) but not for the truth of information contained therein.  *See Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991) ("[A] district court may take judicial notice of the contents of relevant public disclosure documents . . . as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." (internal quotations omitted)); *Cali v. E. Coast Aviation Servs.*, 178 F. Supp. 2d 276, 287 n.6 (E.D.N.Y. 2001).

**B.  The Wonderful Company LLC is not a Proper Defendant**

Defendants argue that Plaintiffs' claims against The Wonderful Company should be dismissed because the claims against it are insufficient.  The Court finds that the SAC fails to allege sufficient facts to support a claim against The Wonderful Company.

Plaintiffs contend that The Wonderful Company is directly liable for the claims alleged in the SAC because it "had authority and control over [POM] . . . by providing advertising services to create and implement [POM's] marketing and advertising campaigns."  Doc. 36 ¶ 15.  Plaintiffs point to The Wonderful Company's website where it explains how, "with regard to the Product, it 'obsessively review[s] every step of the production process' and 'designed [its] own proprietary pressing equipment in order to extract maximum flavor and nutrients.'"  Doc. 45 at 11 (quoting Doc. 36 ¶ 63).  Additionally, the SAC alleges that Adam Cooper, the vice president of marketing for The Wonderful Company, was quoted as saying that POM's success is due in part to Defendants' "tireless marketing efforts to let people know that we're THE Antioxidant Superpower, and we can help you get crazy healthy by drinking [the Product]."  Doc. 36 ¶ 33.

Defendants contend that Plaintiffs have failed to allege that "The Wonderful Company reviewed, considered, or approved any specific representation on which Plaintiffs' claims are based.  Nor do Plaintiffs allege that The Wonderful Company directly sold the . . . Product."  Doc. 43 at 14.  Defendants rely on *Magnus v. Fortune Brands, Inc.*, which held that plaintiffs failed to allege specific facts to establish the parent companies' direct liability because the parent companies did not manufacture the product at issue, 41 F. Supp. 2d 217, 224 (E.D.N.Y. 1999), and *In re Frito-Lay North America, Inc. All Natural Litigation*, which found that plaintiff's allegations that the parent company markets, advertises, and distributes the product were insufficient to establish direct liability, No. 12-MD-2413 (RRM), 2013 WL 4647512, at *5 (E.D.N.Y.

8

Aug. 29, 2019). Doc. 43 at 14. The Court finds the analysis in *Frito-Lay* in particular to be persuasive.

None of the allegations against The Wonderful Company indicate that it had any role in the decision to label the Product "All Natural" or exclude the presence of PFAS from the label. The facts laid out in the SAC do not specifically relate to any marketing decisions that The Wonderful Company "controlled," but rather the fact that they provided marketing resources to their subsidiary and created a uniform message across all advertising platforms. While The Wonderful Company might "review every step of the *production* process" (emphasis added), as the SAC alleges, it is not alleged to have reviewed or have had any control over the alleged deceptive *marketing*. *See* Doc. 36. The SAC does not allege that The Wonderful Company itself, during the "review" of production, had any role in marketing decisions. *See* Doc. 36; *see, e.g., In re Frito-Lay*, 2013 WL 4647512, at *5.

Finally, the statement by The Wonderful Company's vice president of marketing is not dispositive of direct liability since the context makes it clear that "we're" in the phrase attributed to him ("we're THE Antioxidant Superpower") is referring to POM and the Product, and "such representations may result from public relations motives or an attempt at simplification." *In re Frito-Lay*, 2013 WL 4647512, at *5 (quoting *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F. Supp. 831, 846 (D. Del. 1978)). Moreover, the Court is "not persuaded that a failure to distinguish between parent and subsidiary [. . .] is sufficient to show that the parent controls the subsidiary's marketing and operational policies." *Id*. at *5 (internal quotation marks omitted) (quoting *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001)). Thus, Plaintiffs' allegations that the "uniform marketing representations" across The Wonderful Company's platforms give rise to direct liability are not sufficient because Plaintiffs still fail to show that The Wonderful Company is in "control" of POM's marketing decisions.

Therefore, the allegations in the SAC are not sufficient to establish that The Wonderful Company actively participated in the marketing and advertising decision to label the Product as "All Natural," or failing to disclose the presence of PFAS. All that these allegations show, rather, is that The Wonderful Company was acting as a parent company that "necessarily exercise[s] a considerable degree of control over the subsidiary corporation," but "the discharge of that supervision alone" is not enough to give rise to direct liability. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). Accordingly, The Wonderful Company is dismissed.

### C. Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint is Granted in Part and Denied in Part

#### 1. Counts I & II: Violation of the New York Deceptive Trade Practices Act (N.Y. Gen. Bus. Law §§ 349 and 350)

The SAC alleges that POM violated GBL §§ 349 and 350 by (1) misleadingly, inaccurately, and deceptively advertising and marketing the Product to consumers as "All Natural" in order to induce consumers to pay a premium; and (2) omitting from their labeling the fact that the Product contains dangerous levels of PFAS, even though POM maintained exclusive control—and knowledge of—the contents of the Product. Doc. 36 ¶¶ 130–51.

GBL § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." False advertising is defined as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." GBL § 350–a(1). "While the standard for recovery under [§] 350 is specific to false advertising, it is otherwise identical to [§] 349." *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 154 (S.D.N.Y. 2022). Therefore, the Court will analyze the two claims together.

To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer–oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Hofmann v. Long Island Univ.*, No. 22-393-CV, 2024 WL 3262819, at *2 (2d Cir. July 2, 2024) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Claims brought under GBL §§ 349 and 350 are not required to meet the heightened pleading requirements of Rule 9(b). *See Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575–76 (S.D.N.Y. 2021). The parties do not contest the first or third elements, *i.e.*, that the conduct was consumer–oriented or that Plaintiffs suffered an injury.[3] Doc. 36 ¶ 135; *see* Doc. 43; *see also Segedie v. Hain Celestial Grp., Inc.*, No. 14 Civ. 5029 (NSR), 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) ("Plaintiffs have also adequately alleged injury by claiming that they paid a price premium that they would not have paid if the products were not labeled 'natural' or 'all natural.'"). The parties do contest the second element— that Wonderful Company's conduct is materially misleading. POM argues that the Court should dismiss Plaintiffs' GBL §§ 349 and 350 claims because the SAC failed to sufficiently allege that POM's labeling is materially misleading to a reasonable consumer. Doc. 43 at 4.

To determine whether the act is materially misleading, the act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013); *see also New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 328 (S.D.N.Y. 2015) ("To aid in the interpretation of the second element, the New York Court of Appeals has instructed that a deceptive act or practice has an objective definition, whereby deceptive acts or practices—which may be acts or omissions—are limited to those likely to mislead a

---

[3] However, in response to Plaintiffs' Negligence claim, Defendants do contest that Plaintiffs suffered injury. Doc. 43 at 12 ("Plaintiffs have not alleged that they were injured by the Products, or that consumers face a 'reasonable possibility of injury' given that Plaintiffs have failed to allege even a plausible risk of harm.").

reasonable consumer acting reasonably under the circumstances."). The Court agrees with Plaintiffs that "materiality is not a separate element; rather, to state a GBL claim, the plaintiff must plead the existence of a material misrepresentation that is likely to mislead a reasonable consumer." Doc. 45 at 8; *see Winans v. Oruna Foods North America Inc.*, No. 23 Civ. 01198 (FB) (RML), 2024 WL 1741079, at *4 (E.D.N.Y. 2024) (citing *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 108 (S.D.N.Y. 2021)).

To survive a motion to dismiss, "Plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Cooper*, 553 F. Supp. 3d at 94–95 (internal quotation marks omitted) (citing *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021)). Rather, they must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (citation omitted). In evaluating the instant motion, the Court considers whether the SAC plausibly alleges that a "reasonable consumer would ascribe the meaning that [P]laintiffs allege they ascribed to it." *Fishon v. Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LJL), 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020). The Court may determine, as a matter of law, that an allegedly deceptive advertisement would not mislead a reasonable consumer, *see Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), although the reasonable-customer inquiry is "generally a question of fact not suited for resolution at the motion to dismiss stage," *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

POM argues that Plaintiffs' theory of deception should be rejected because, "nothing about the challenged representations promises the absolute absence of PFAS, which are not an ingredient, and which are recognized to be ubiquitous microcontaminants in our food and environment." Doc. 43 at 6. Additionally, POM argues that "cases that have challenged 'natural' labeling claims based on the alleged presence of *unintended* microcontaminants have routinely been dismissed as a matter of

law at the pleadings stage." Doc. 46 at 3. POM mainly relies on the "glyphosate cases" to find analogy to the case at bar. *See id.* (quoting *Axon v. Citrus World, Inc.*, 813 F. App'x 701 (2d Cir. 2020) and *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2021)). In *Axon*, the Second Circuit held that:

> The presence of glyphosate as a contaminant . . . rather than an in-
> tentionally-added ingredient, bolsters the conclusion that a reasona-
> ble consumer, viewing the brand name "Florida's Natural," would
> not make assumptions regarding the presence or absence of trace
> amounts of glyphosate.

813 F. App'x at 705. Similarly, the district court in *Parks* dismissed the case, finding that the presence of glyphosate did not render the term "natural" misleading, as "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the [p]roducts." 377 F. Supp. 3d at 247. The Court does not find these cases persuasive in light of the recent authority discussing the presence of PFAS in products, and the many particular health risks associated with PFAS. *See* Doc. 36 ¶¶ 36–52. Thus, the Court "presumes that the presence of PFAS would be concerning to many consumers." *Winans*, 2024 WL 1741079, at *4 (finding that, even if materiality were a separate element, the court cannot conclude, as a matter of law, that the presence of PFAS in butter is immaterial to a reasonable consumer).

First, the SAC alleges that consumers prefer all-natural products and are well-aware that consumers are increasingly demanding healthier options for beverages that support their wellness goals, and that consumers prioritize products that are free of certain toxic chemicals. Doc. 36 ¶¶ 66–69. Second, the SAC further alleges that Plaintiffs would not have purchased the Product, or would have paid less for it, had they known the Product contained PFAS. *Id*. at ¶¶ 95, 135, 145. Drawing all reasonable inferences in Plaintiffs' favor, the Court finds that they have sufficiently pleaded that a reasonable consumer could be misled. *See Colpitts v. Blue Diamond Growers*, 527 F.

Supp. 3d 562, 583–84 (S.D.N.Y. 2021); *see also Petrosino v. Stearn's Prods., Inc.*, No. 16 Civ. 7735 (NSR), 2018 WL 1614349, at *7 (S.D.N.Y. Mar. 30, 2018) (denying defendant's motion to dismiss GBL §§ 349 and 350 claims, finding that it is not "unreasonable as a matter of law for a person to expect that the product labeled 'natural' contain only non-synthetic ingredients").

At this juncture, the question is whether "*no* reasonable consumer would believe" that the Products did not contain PFAS. *Hicks v. L'Oreal U.S.A., Inc.*, No. 22 CIV. 1989 (JPC), 2024 WL 4252498 at *17 (S.D.N.Y. Sept. 19, 2024) (citing *Colpitts*, 527 F. Supp. 3d at 583). Given the allegedly known serious health conditions associated with PFAS exposure—and PFAO exposure in particular—as well as the tension between various representations on the packaging of the Product and the alleged health risks posed by PFAS, Plaintiffs sufficiently allege the expectations of a reasonable consumer at this stage. *See id.*

In response to Plaintiffs' omissions-based theory, POM argues that they "have no obligation to affirmatively disclose the presence of varying levels and types of ubiquitous microcontaminants that might exist, if at all, in concentrations that Plaintiffs have not plausibly alleged present any risk to health." Doc. 43 at 9–10 (citations omitted). This argument fails because the SAC repeatedly alleges that POM knew that PFAS were in the Product and that PFAS had harmful effects. *See* Doc. 36 ¶¶ 63, 65, 74, 86, 101, 105, 114. Even if this argument was successful, it would not result in dismissal of the GBL claims given the misrepresentation/deception theory pleaded. *See Hicks*, 2024 WL 4252498, at * 17 (finding that L'Oréal's omission-based argument fails because plaintiffs alleged that L'Oréal knew or should have known that PFAS were in the products and had harmful effects).

At this juncture, given the allegedly known serious health issues associated with PFAS exposure, as well as the tension between those health issues and the various representations on the packaging of the Product, the SAC sufficiently pleads allegations

that support an objective expectation that the Product did not contain a detectable level of PFAS.

### 2. Count III: Negligence Per Se

The SAC alleges a negligence per se claim based on POM's violations of the FDCA and N.Y. Agric. & Mkts. Law Section 199–a. Doc. 36 ¶¶ 152–61. Since the state and federal laws are parallel, the Court will analyze both together.

"[T]he mere '[v]iolation of a statute [. . .] does not automatically constitute negligence per se. Only statutes designed to protect a definite class of persons from a particular hazard, which persons within the class are incapable of avoiding, can give rise to negligence per se for violation of the statute.'" *Timperio v. Bronx-Lebanon Hospital Center*, 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019) (quoting *German ex rel. German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995)). Violations of consumer protection laws are generally treated as negligence per se. *See Gencarelli v. Coca–Cola Co.*, No. 20 Civ. 85 (TJM) (CFH), 2020 WL 2561258 (N.D.N.Y. Apr. 13, 2020), report and recommendation adopted, 2020 WL 2559914 (N.D.N.Y. May 20, 2020). The Second Circuit has expressly recognized that "a private cause of action for per se negligence arises under New York State law upon violation of the FDCA." Doc. 36 ¶ 161; *see also Ezagui v. Dow Chemical Corp.*, 598 F.2d 727, 733 (2d Cir. 1979). This doctrine relieves the plaintiff of establishing specific common law negligence elements that the defendant owed a duty to the plaintiff and that the defendant breached that duty. *See Gencarelli*, 2020 WL 2561258, at *5.

According to the SAC, POM violated the FDCA and N.Y. Agric. & Mkts. Law § 199–a because (1) the Product is "adulterated," as it contains PFAS (including PFOA) which is undisputedly a deleterious substance and a "known carcinogen"; and (2) the Product is "misbranded" because its labeling is false or misleading in that it (a) represents that the product is "All Natural" and "100% Pomegranate Juice" when it actually contains dangerous synthetic PFAS, and (b) fails to identify the fact that it contains or is

at risk of containing PFAS.  Doc. 36 ¶¶ 152–61.  POM asserts that Plaintiffs' negligence per se claim fails because they have not sufficiently alleged POM has violated the predicate statutes.  Doc. 43 at 12–13.

> i.  *Adulterated*

Food is considered "adulterated" if it "contains any poisonous or deleterious substance which may render it injurious to health; but if the substance is *not an added substance* such food shall not be considered adulterated . . . if the *quantity* of such substance in such food does not ordinarily render it injurious to health."  FDCA § 342(a)(1); N.Y. Agric. & Mkts. Law § 200 (emphasis added).

POM argues that Plaintiffs failed to sufficiently allege that "they were injured by the Products, or that consumers face a 'reasonable possibility of injury,' given that Plaintiffs have failed to allege even a plausible risk of harm."  Doc. 43 at 12.  However, the SAC alleges that the EPA "recently confirmed that the levels at which negative health effects could occur . . . from exposure to certain PFAS chemicals is [sic] much lower than previously understood– including near zero in some cases."  Doc. 36 ¶ 60 (emphasis omitted).  Additionally, Plaintiffs argue that PFOA is a "known carcinogen," which necessarily "may render" the Product injurious to health.  Doc. 36 ¶¶ 36–49; Doc. 45 at 9.  At this juncture, Plaintiffs have adequately pleaded that the presence of PFAS "may render" the Product injurious to health.

> ii.  *Misbranded*

Food is deemed "misbranded" if its "labeling is false or misleading in any particular."  FDCA § 343(a); N.Y. Agric. & Mkts. Law § 201.  The Code of Federal Regulations ("CFR") § 101.100(a) sets out an exemption for misbranded foods, excluding from labeling requirements "incidental additives that are present in a food at *insignificant levels* and do not have any technical or functional effect in that food."  21 CFR § 101.100(a)(3) (emphasis added).  Section 101.100(a)(3)(iii) defines incidental

additives as, "substances migrating to food from equipment or packaging or otherwise affecting food that are not food additives."

POM argues that the SAC "fail[s] to identify a misrepresentation on the Product labels or a basis to require disclosure of the alleged presence of PFAS in trace and inconsistent amounts," since, pursuant to 21 CFR § 101.100(a)(3)(iii), "incidental PFAS microcontaminants . . . fall within the FDA's exemption of migratory substances and need not be included on the mandated list of 'ingredients' on food packaging." Doc. 43 at 12–13. Consequently, POM argues that the presence of PFAS was incidental and should therefore fall under the FDA's migratory substance exception pursuant to 21 CFR § 101.100(a)(3)(iii). *Id.* at 13.

Plaintiffs allege that POM's argument is flawed because POM assumes "that PFAS in the Product were added incidentally." Doc. 45 at 10 (internal citation marks omitted). However, Plaintiffs do not allege that POM intentionally used or added PFAS in the manufacturing process, nor do they claim that POM intentionally added PFAS in the Product. *See* Doc. 36. The SAC simply states that POM knew of the presence of PFAS. Doc. 36 ¶¶ 63, 65, 74, 86, 101, 105, 114. Thus, there is a question of fact remaining regarding whether the PFAS were *intentionally* or *incidentally* added to the Product.

Even if the PFAS were not intentionally added, Plaintiffs argue that incidental food additives are only exempt from traditional labeling requirements if they are present "at insignificant levels" and are "used in conformity with regulations," 21 CFR § 101.100(a)(3) and (a)(3)(iii), which Plaintiffs claim they are not. Doc. 45 at 10. Thus, Plaintiffs allege that questions of fact remain regarding (a) whether PFAS are present "at insignificant levels" in the Product; and (b) whether PFAS were "used in conformity with regulations." *Id.*

The Court agrees that there remain questions of fact concerning whether the Product was misbranded that cannot be decided at this juncture. The amount of PFAS in

the product and whether these levels are significant or not is not a question that the Court can decide on a motion to dismiss. Therefore, the motion to dismiss Count III is denied with respect to both the adulterated and misbranded allegations.

   *3. Count IV: Unjust Enrichment*

   In New York, an unjust enrichment claim requires a plaintiff to establish (1) that the defendant benefitted, (2) at the plaintiff's expense, and (3) that equity and good conscience require restitution. *Zakheim v. Curb Mobility LLC*, No. 22 Civ. 4594 (GAM), 2023 WL 3898867, at *7 (E.D. Pa. June 8, 2023) (citing *Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). A claim for unjust enrichment lies "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Cooper*, 553 F. Supp. 3d at 116 (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (2012)). A claim for unjust enrichment does not lie under New York law "where it simply duplicates, or replaces, a conventional contract or tort claim." *Id*. at 115; *see also Corsello*, 967 N.E.2d at 1185 (stating that "unjust enrichment is not a catchall cause of action to be used when others fail").

   Courts analyzing such issues under New York law routinely dismiss unjust enrichment claims which are based upon "the same facts giving rise to . . . claims under the New York [GBL] and . . . fraud." *Zakheim*, 2023 WL 3898867, at *7; *see, e.g., Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (dismissing an unjust enrichment claim where the plaintiff "relie[d] on the same . . . theory of liability" and injury as their GBL claim (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 (S.D.N.Y. 2020))); *see also Borenkoff v. Buffalo Wild Wings, Inc.*, No. 16-cv-8532 (KBF), 2018 WL 502680, at *5 (S.D.N.Y. Jan. 19, 2018) (finding plaintiffs' allegations entirely duplicative of their GBL § 349 claim, and therefore dismissing the unjust enrichment claim under New York law).

The case law clearly establishes that unjust enrichment claims are duplicative of GBL claims where they are premised on the same "factual allegations and the same theory of liability." *Ham v. Lenovo (United States) Inc.*, No. 22 Civ. 05131 (ALC), 2024 WL 1348707 *8 (S.D.N.Y. Mar. 29, 2024) (citing *Hesse*, 463 F. Supp. 3d at 474). Here, Plaintiffs' unjust enrichment claim is predicated upon the very same price premium and benefit of the bargain theories of injury advanced for their GBL claims. *See* Doc. 36 ¶ 167 ("Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Product by Plaintiffs and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because [POM's] representations regarding the quality or value of the Product were misleading to consumers, which caused injuries to Plaintiffs and the other members of the Class, because they would have not purchased the Product had they known the truth or would only have purchased the Product for a lower price.").

Plaintiffs' unjust enrichment claim must therefore be dismissed because it merely duplicates their other claims.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion is GRANTED in part and DENIED in part. The GBL §§ 349 and 350 (Claims I & II) and negligence per se (Claim III) claims are not dismissed, but the unjust enrichment claim (Claim IV) is dismissed. The parties are directed to appear for a telephonic conference on December 12, 2024, at 3:30 PM. The parties are directed to call (877) 411-9748 at that time and enter access

code 3029857#.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 42.

It is SO ORDERED.

Dated:    November 25, 2024
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.